## The Germantown Passenger Railway Company *versus* Walling.

1. It is not contributory negligence *per se* for a passenger to ride on the step of the front platform of a crowded street railway car, with the assent of the conductor or driver. In such case the measure of duty on the part of the passenger is ordinary and reasonable care, and what that is, in any given case, and whether the passenger complied with it, is a question for the jury.

2. Where the admitted facts, or the proofs adduced by a party clearly show contributory negligence by him, it is the duty of the court to withhold the question from the jury, and determine it as a matter of law; but when the measure of duty is ordinary and reasonable care, and the standard shifts with the circumstances of the case, negligence is always a question for the jury.

3. Where specific instructions were not requested by a proper point, and no exceptions were taken to such as were given, there is no error raised on the record for correction.

4. W. hailed a crowded passenger car and the driver stopped. Being unable to get on the rear platform by reason of the crowd, he went to the front platform, which was also crowded, but succeeded in standing on the step, on which there were already two persons, by holding on to the hand-rails at the side. In turning a curve several passengers pushed against W., breaking his hold, when he fell under the wheel and was killed. In an action by his widow against the company for damages, *Held* (affirming the judgment of the court below), that the question whether the deceased was guilty of contributory negligence was properly submitted to the jury.

January 7th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county:* Of January Term 1880, No. 336.

[Germantown Pass. Railway Co. *v.* Walling.]

Case, by Jane R. Walling and Joshua Clendennon, guardian of Grace M. Walling, against the Germantown Passenger Railway Company, to recover damages for the death of Bernard Walling, the husband and father of the plaintiffs, which they alleged to have been caused by the negligence of the defendants' servants.

On the trial, before MITCHELL, J., the evidence disclosed the following facts : About eight o'clock, on the morning of October 2d 1876, Bernard Walling, a man thirty-three years of age, hailed a car of the defendant company, at Girard avenue and Nineteenth street, for the purpose of going to the Centennial exhibition.  The car stopped, but owing to its crowded condition he was unable to get on the rear platform.  He went to the front platform, which was also crowded, and took his position on the step, by squeezing in between two men, holding on by one hand to the dasher and by the other to the iron bar under the front window.  In passing from Girard avenue into Poplar street—which streets form an angle of about 135 degrees—a curve is formed in the track and the grade descends beyond the curve.  In rounding the curve, several passengers were pushed against Walling, either by the jar of turning, or by a tinsmith who was trying to get off, with his box, or by both, breaking his right hand hold, and swinging him round in front of the dasher, in which position he was carried a short distance, when he fell in front of the wheel, which passed over his chest and killed him.  Several other passengers fell off at the time of the accident.  Before the car reached the curve, the driver and several passengers called out to hold on.  The evidence as to the speed of the car in turning the curve was conflicting. There was some conflicting evidence also as to the condition of the track at the curve, but it was not disputed that it had been relaid a short time previously.

The only evidence on the question of the measure of damages was that of the plaintiff, Jane Walling, who testified as follows : "My husband was thirty-three years of age at the time of his death.  He had been a fruit grower—unfortunate by fire, and afterwards the grasshoppers destroyed crops.  Was engaged in restaurant at Centennial.  The business was to begin that morning.  Had formed a partnership with Mr. Whitney."

The defendant submitted the following points :

1. The jury must find for the defendant on the evidence.

2. If the jury believe that Bernard Walling, husband of the plaintiff, Jane R. Walling, in violation of a rule of the defendant company, forbidding passengers to get on or ride on the front platform of their cars, and brought to his knowledge by notices posted in conspicuous places on the car on which he was riding, got on and rode on the front platform of the car, and that his death resulted from the position occupied by him in violation of said rule, the plaintiff cannot recover.

[Germantown Pass. Railway Co. *v.* Walling.]

3. As the plaintiff's own evidence shows that Bernard Walling, husband of the plaintiff, Jane R. Walling, got on the front platform of the car and stood while the car was in motion, with one foot on the step of the platform, and that the platform was so crowded that it was necessary for him to hold with one hand to the dasher, and the other to the iron bar under the window of the car in order to retain his position on the car, and that his occupancy of this position in this manner was a contributing cause of his death, the plaintiff cannot recover.

4. If the jury believe that Bernard Walling, husband of the plaintiff, Jane R. Walling, got on the front platform of the car and stood while the car was in motion, with one foot on the step of the platform, and that the platform was so crowded that it was necessary for him to hold with one hand to the dasher and with the other to the iron bar under the window of the car, in order to retain his position on the car, and that his occupancy of this position in this manner was a contributing cause of his death, the plaintiff cannot recover.

5. The plaintiff's own evidence showing that the death of Bernard Walling, husband of the plaintiff, Jane R. Walling, resulted from the jolt of the car concurring with the crowded condition of the front platform of the car, and that Bernard Walling contributed to the crowding of the platform, the plaintiff cannot recover.

6. If the jury believe that the death of Bernard Walling, husband of the plaintiff, Jane R. Walling, resulted from the jolt of the car concurring with the crowded condition of the front platform of the car, and that Bernard Walling contributed to the crowding of the platform, the plaintiff cannot recover.

7. If Bernard Walling, husband of the plaintiff, Jane R. Walling, lost his balance and fell from the car through the act of the passenger in getting off the car, the plaintiff cannot recover.

8. If at the time Bernard Walling, husband of the plaintiff, Jane R. Walling. got on the car, and the jury believe there was standing room either on the rear platform or inside the car, and that Bernard Walling, notwithstanding, took a position on the lower step of the front platform, and that the occupancy of such position, even though concurring with the jolting of the car caused his death, the plaintiff cannot recover.

The court declined to answer these points, except as answered in the general charge, and charged the jury, inter alia, as follows:

" The foundation of this action is the negligence of the defendant company, and, therefore, before the plaintiff is entitled to recover, you must be satisfied that the injury of which she complains resulted from the fault or negligence of the defendant, and

not from the joint negligence of the defendant and Mr. Walling himself, still less from the negligence or fault of any third person, such as the tinsmith, of whom you have heard.·

"I should, perhaps, give you a still further caution in regard to what is called in law contributory negligence, which means that the accident resulted from the joint fault or negligence of the company and Mr. Walling.

"Now, it is the duty of the carriers of passengers, such as the horse-car companies, or any other carrying company, such as railroad companies, to take the highest possible care of their passengers which the circumstances permit; and when they allow a passenger to get on at an unusual place, that is an assurance to him that he will be taken care of, and that they will guard him against accident as far as the circumstances will permit. On the other hand, it is the duty of the passenger to go into the proper, usual and safe place, if it is possible to do so. When Mr. Walling, therefore, stopped the car at Nineteenth street, it was his duty to get inside the car if he could, and, if not, to take a place on the rear platform as the next best place, and not until he failed to get into the car or on the rear platform would he have been justified in going to the unusual and somewhat dangerous place of the front platform. If, however, as I have said, he could not get in the body of the car, or could not get upon the rear platform, and he was permitted to go upon the front platform, then he had a right to take that as an assurance that the company would take all reasonable and proper precautions to avoid injury to him even in that place.

"As I have said, the testimony is that at Nineteenth street Mr. Walling stopped the car, and the testimony of some of the witnesses is that he went toward the rear platform, and then came forward and tried to get on the front platform. It is for you to say whether there is sufficient evidence to show that he could not get on the rear platform. If so, then he was justified in getting upon the front. He did not succeed in getting upon the front platform, however, but he only got upon the step upon the left-hand side of the car as it was going out, and he there held on with one hand by the rail under the window in front of the car, and with the other to the iron of the dasher." * * *

"Upon the cause of the accident, it is for you to consider all the evidence on it—the condition of the car, the speed at which it was going, the fact of the turning of the curve, whether or not there was any jolt, and to what extent it influenced the accident, the action of the tinsmith and all the other facts in the cause, to make up your minds according to the best judgment upon all of the facts as to what was the cause of the accident. If you find it was through the negligence or fault of the defendant company, then you will find a verdict here for the plaintiff; but if you find

[Germantown Pass. Railway Co. *v.* Walling.]

it was not from the defendant's negligence, or if it was by the joint negligence of defendant and Mr. Walling himself, then no matter how unfortunate the accident may have been in its results to the plaintiff, the defendant cannot honestly and legally be compelled to pay for it.

"As you find in one or the other way, you will find a verdict either for the plaintiff or defendant. If you find a verdict for the plaintiff upon the grounds that I have stated, you would then have to consider the question of damages. That, as has been said to you by counsel for plaintiff, is allowed by law to be damages simply for pecuniary loss. Injuries to feelings and suffering by the deprival of companionship are not capable of compensation in money. The law does not undertake to place an estimate upon these considerations; but the law does permit, where the loss has resulted from the negligence of defendant, that the plaintiff shall be put in as reasonable and, as nearly as may be, in the same pecuniary condition that she would have been had no such accident occurred."

Verdict and judgment for the plaintiffs for $5000. The defendant took this writ, assigning for error the refusal of the court to affirm the first, third, fourth, fifth and sixth points above set forth.

*C. H. Gross* (with him *T. J. Barger*), for plaintiff in error.— The undisputed facts, and the evidence adduced by the plaintiff, show that the deceased was guilty of contributory negligence, *per se*, and the court should have affirmed our points to that effect: City of Harrisburg *v.* Sayler, 6 Norris 216; McKee *v.* Bidwell, 24 P. F. Smith 218; Pennsylvania Railroad Co. *v.* Werner, 6 W. N. C. 520; Passenger Railway Co. *v.* Boudrou, 11 Norris 475; Pittsburgh & Connellsville Railroad Co. *v.* McClurg, 6 P. F. Smith 294; West Chester & Philadelphia Railroad Co. *v.* McElwee, 17 Id. 311; Willis *v.* Long Island Railroad Co., 32 Barb. 398.

The evidence of damage was too vague, under the requirements of the Act of April 4th 1868, Pamph. L. 58, to justify the verdict of $5000 for plaintiffs. That act provides, that in actions against railroad corporations for personal injuries or loss of life, the defendant shall only be liable for such damage "as the evidence shall *clearly prove* to have been pecuniarily suffered, not exceeding," &c. The object of the act was to curb the tendency of juries to find large verdicts against railroad companies, upon little or no evidence. There was no evidence here of the pecuniary loss, actual or probable, suffered by the plaintiffs.

*Richard P. White*, for defendants in error.—The negligence of the defendant company is settled by the verdict. The only question is, was the deceased guilty of contributory negligence *per se ?* When a carrier receives a passenger, the latter is justified in tak-

[Germantown Pass. Railway Co. *v.* Walling.]

ing such place in the conveyance as may be available. The public cannot be required at their peril, to examine into the sufficiency and safety of the accommodations offered them. During the Centennial exhibition, it was the universal practice of passenger railway companies to over-crowd their cars, and to receive passengers on the platforms and steps. That riding on the front platform of a horse-car is not negligence *per se*, but is a question for the jury, has been decided in several New York and Massachusetts cases: Ginna *v.* Second Avenue Railroad Co., 8 Hun 494; Meesel *v.* Railroad Co., 8 Allen 234; Wilton *v.* Railroad Co., 107 Mass. 108; Maguire *v.* Railroad Co., 115 Id. 239; Burns *v.* Railroad Co., 50 Mo. 140.

On the question of damage, there was more evidence in this case than was thought sufficient in Railroad Co. *v.* White, 7 Norris 327. But the portion of the charge relating to this subject was not assigned for error; there was no point submitted and no exception taken.

Mr. Justice TRUNKEY delivered the opinion of the court, January 24th 1881.

At the outset the defendant (plaintiff in error) claims but two questions are presented in the assignments: (1.) Was Bernard Walling guilty of contributory negligence *per se*, so as to make it the duty of the court below to instruct the jury that he could not recover? And (2.) was the evidence of damage too vague under the requirements of the Act of April 4th 1868, to justify a verdict for the plaintiffs below?

In fact, the second question is not raised in the record. As a general rule, where specific instructions were not requested by a proper point, and no exception to such as were given, there is no error for correction. Complaint is not now made of the charge respecting damages; the only errors alleged are the refusal of the defendant's points, and they were upon another branch of the case. Surely if the decedent's death, without fault in him, was caused by the defendant's default, the plaintiffs were entitled to recover. In a charge of marked accuracy and fairness the questions of defendant's negligence and of the decedent's concurrent negligence were submitted to the jury. It is not pretended that the court could have refused to submit to them to decide whether the defendant was negligent, and it is conceded that fact is settled by the verdict. If it was the duty of the court to determine there was contributory negligence by the decedent, all the defendant's points should have been affirmed. This is the sole question now for consideration—the one first stated by defendant.

The facts, claimed to reveal want of due care in the decedent, are not in dispute. " He voluntarily got upon a car so crowded

[Germantown Pass. Railway Co. *v.* Walling.]

that he was obliged to take a position on the step of the front plat-
form of the car, occupied at the time by two other men, between
whom he squeezed into a position, where, for the purpose of
retaining his place, he was obliged to hold fast with one hand to
the dasher and the other to the iron bar, under the window of the
car:" so says the defendant. In addition, the car stopped and
received him as a passenger. The driver testifies he knew the car
was so full a man could not go through to the back platform.
Crowded as it was, the conductor says there was room for more,
both inside and on the rear platform. But Walling first tried to
get on the rear platform, and failing went to the front.

Conductor, driver and passengers acted as if there was room, so
long as a man could find a rest for his feet and a place to hold on
with his hands. Nor was that action exceptional. Notoriously,
it was very common in 1876, and, perhaps, is not infrequent at
this day. The companies do not consider such practice dangerous,
for they knowingly suffer it, and are parties to it. Their cars
stop for passengers when none but experienced conductors could
see a footing inside or out. The risk in travelling at the rate of
six miles an hour is not that when the rate is sixty, or even thirty.
An act which would strike all minds as gross carelessness in a
passenger on a train drawn by steam-power, might be prudent if
done on a horse-car. Rules prescribed for observance of pas-
sengers on steam railroads, which run their trains at great speed,
are very different from those on street railways. In absence of
express rules, every passenger knows that what might be consistent
with safety on one would be extremely hazardous on the other.

Street railway companies have all along considered their plat-
forms a place of safety, and so have the public. Shall the court
say that riding on a platform is so dangerous, that one who pays
for standing there can recover nothing for an injury arising from
the company's default?

Meesel *v.* Lynn & Boston Railroad Co., 8 Allen (Mass.) 234,
was a case much like this in its facts. The court said: "It is
well known that the highest speed of a horse railroad car is very
moderate, and the driver easily controls it, and stops the car by
means of his voice, his reins, and his brake. In turning round an
angle, from one street to another, passengers are not required to
expect that he will drive at a rapid rate, but, on the contrary,
might reasonably expect a careful driver to slacken his speed.
The seats inside are not the only places where the managers expect
passengers to remain; but it is notorious that they stop habitually
to receive passengers to stand inside, till the car is full, and then to
stand on the platforms till they are full, and continue to stop and
receive them, even after there is no place to stand except on the
steps of the platforms. Neither the officers of these corporations,
nor the managers of the cars, nor the travelling public seem to

regard this practice as hazardous; nor does experience, thus far, seem to require that it should be restrained on account of its danger. There is, therefore, no basis upon which the court can decide, upon the evidence reported, that the plaintiff did not use ordinary care. It was a proper case to be submitted to the jury upon the special circumstances which appeared in evidence." These remarks are quite applicable to the case in hand.

Standing on the front platform of a horse-car when there is room inside, is not conclusive evidence that the person injured by the driver's default was not exercising due care: Maguire *v.* Middlesex Railroad Co., 115 Mass. 239. A street railway company has the right to carry passengers on the platforms, and, if a passenger be injured while standing there without objection by the company's agent, whether the injury was with his contributory negligence is for the jury to decide, under all the facts and circumstances detailed in evidence: Burns *v.* Bellefontaine Railway Co. of St. Louis, 50 Mo. 139.

It also has been decided in other states, that, if a passenger be injured while standing on the platform of a street or horse-car, the question of his contributory negligence is one of fact for the jury.

So little danger exists in riding on the platforms, accidents to passengers while thus riding are so rare, that this is the first time the question raised has been presented in Pennsylvania. We think the decisions in other states above referred to are sound. They accord with well-settled principles. What is and what is not negligence, in a particular case, is generally a question for the jury, and not for the court. It is always a question for the jury when the measure of duty is ordinary and reasonable care. When the standard shifts with the circumstances of the case, it is, in its very nature, incapable of being determined as a matter of law. When both the duty and the measure of its performance are to be ascertained as facts, a jury alone can determine what is negligence, and whether it has been proven: West Chester & Philadelphia Railroad Co. *v.* McElwee, 17 P. F. Smith 311.

It is the duty of courts, in cases of clear negligence arising from an obvious disregard of duty and safety, to determine it as a question of law. This principle was applied in the numerous cases cited by defendant. It should always be when the admitted facts, or the proofs adduced by a party, conclusively show his negligence.

The undisputed facts in this case show, that the measure of duty on the part of the deceased was ordinary and reasonable care, and what that was, and whether he complied with it, could only be determined by the jury.

Judgment affirmed.