## Camden & Atlantic R. R. Co. *versus* Hoosey.

1. A passenger in an excursion train was unable to find a seat, owing to the crowded condition of the cars. Although there was standing-room inside, he stepped outside of a car while the train was in rapid motion, and placed himself on or near the edge of the platform, with his back against the window, holding on by an iron rail fixed to the car. In this position he rode for some minutes, when a jolt occurred, which threw him to the ground, and inflicted an injury upon him. Suit having been brought by him against the railroad company, to recover damages for the injury done him,—*Held*, that he had been guilty of such contributory negligence as to preclude his right of recovery, and that the court should have so instructed the jury.

2. *Semble*, that as a general rule, and under ordinary circumstances, it is the duty of a railroad company to provide every passenger with a seat, and that if a passenger, exercising reasonable care and prudence, is injured in consequence of the company's neglect in this regard, the latter must respond in damages.

January 27th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas No. 1, of *Philadelphia county:* Of July Term 1881, No 93.

Case, by John Hoosey, against the Camden and Atlantic Railroad Company, to recover damages for personal injuries suffered by the plaintiff, caused, as alleged, by the negligence of the defendant company.

On the trial, before Pierce, J., the facts appeared as follows:—On August 26th 1878, the plaintiff, a tavern-keeper, joined in an excursion to Atlantic City gotten up by the St.

[Camden & Atlantic R. R. Co. v. Hoosey.]

Ann's Temperance Society. The society made terms with the railroad company, and sold excursion tickets for its own benefit. The excursion train consisted of twenty cars, which afforded room, on the down trip, for all the passengers to be seated. On the return trip the train started from Atlantic City about six o'clock p. m. About ten minutes before it started the plaintiff got on the train on the next to the rear car; he looked in the rear car, and seeing that it was over-crowded, and people were coming out from it, he walked through the train to the forward car, and found the entire train over-crowded and no seats vacant. After remaining standing in the front car for some time, he proceeded to walk back through the cars, the train being then in rapid motion. When he had passed through about two thirds of the cars, all over-crowded so that he was obliged to push through people standing in. the aisles and on the platforms, he stopped on the rear platform of a car, holding on to a railing under the window, the train being still in rapid motion. The plaintiff's testimony at this point was as follows; " I stopped to let people pass who were coming in the opposite direction to me; there were many people coming in the opposite direction; I stopped on the platform to let them get into the car; must have been there one or two minutes before I got a chance to go through; I stood one side outside on the platform to let them get into the car; I had been standing there one or two minutes; the train got a jerk of some kind and somebody struck me on the shoulder and staggered me; then I made a grab with both hands and missed with my right and caught with my left; then I fell down, and the train was going so fast that I fell between the platforms or dashers; I called for help; stop the train, I hollered; a young man caught hold of me; it was John Bannon; he tried to pull me on; I could not tell what he done, I was so excited; I must have held on for half a mile or more; may be a minute and a half or a little over; Bannon was holding on all this time; I finally let go; could hold on no longer; I fell to the ground."

The accident took place near Hammonton, about half way to Philadelphia. One of the passengers on the platform applied the brake and another pulled the bell-rope, which broke, but the train continued on its journey.

The plaintiff was found lying near the track severely injured, though not unconscious, by two residents of the neighborhood, who procured a wagon and took him to Hammonton, where his arm was amputated by a surgeon. The plaintiff admitted that he had taken several drinks during the day at Atlantic City, and two clergymen, who had seen him on the train shortly before the accident, testified that they thought from his appearance he had been drinking, but was not drunk. The men, who

[Camden & Atlantic R. R. Co. *v.* Hoosey.]

found him after the accident, testified, however, that from his appearance, manner, language and from the smell of liquor they had no doubt he was intoxicated.

It was in evidence that the rules of the company forbade passengers from standing on the platforms or passing from car to car while the train was in motion, and that notices to that effect were posted inside the cars and outside on the doors.

The plaintiff presented, inter alia, the following points:—

(1) If the jury find from the evidence that the plaintiff was a passenger upon the cars of the defendants, they were bound to provide him with sufficient accommodation and to carry him in safety, and the failure to provide such sufficient accommodation was negligence on the part of the railroad company. *Answer.* I affirm.

(7) Even if the jury should find from the evidence that prior to the accident the plaintiff had been drinking, unless such drinking had rendered the plaintiff unable and incompetent to conduct himself as an ordinarily prudent man would have conducted himself under similar circumstances, and thus caused or contributed to the accident, the plaintiff is entitled to recover. *Answer.* I affirm, if there was no contributory negligence on his part, and the injury was caused by the negligence of the defendant.

The defendant presented, inter alia, the following points:—

(3) That apart from any rule or notice upon the subject, it is negligence in a man of full age to stand upon or cross a platform of a car in rapid motion upon a steam railroad. *Answer.* I affirm; unless compelled by circumstances to do so.

(5) That if the jury find from the evidence that the accident to the plaintiff would not have occurred if he had not been standing upon the platform, he is chargeable with contributory negligence, and therefore cannot recover. *Answer.* Declined, as stated, leaving to the jury to say whether, under the circumstances there was contributory negligence on the part of plaintiff.

(7) That even if a search for a seat were the real purpose of the plaintiff in going out upon the platform, and even if it were not negligence for him to have crossed from car to car for that purpose, yet if the jury believe from the evidence that he lingered upon the platform instead of immediately crossing, the verdict should be for the defendant. *Answer.* I qualify this, so as it will read his real " and only" purpose; and affirm, unless compelled thereto by circumstances.

(9) That the evidence shows negligence on the part of plaintiff which contributed to produce the injury complained of, and therefore he cannot recover. *Answer.* I decline. It

is for the jury to determine if there was any contributory negligence on the part of plaintiff.

Verdict for the plaintiff for $2,000 and judgment thereon. The defendant, thereupon, took this writ of error, assigning for error, inter alia, the answers to the above points.

*Henry B. Freeman* and *George M. Dallas*, for the plaintiff in error.—It is not the duty of a railroad company absolutely and under all circumstances to provide seats for all passengers. Certain contingencies may render this an impossibility. Their duty is fulfilled if, with reference to existing circumstances, they use due skill and care in the employment of the facilities at their command. The general duty to provide sufficient accommodation rests on a different basis from that to provide safe means of transport. The circumstances here were exceptional. The company supplied an excursion train for a round trip, with ample seat accommodation for members of the excursion, yet the judge, in affirming the plaintiff's first point, erroneously instructed the jury that it was negligence not to have provided sufficient accomodations to meet an unanticipated and unauthorized increase of numbers upon the return trip: Meier v. Railroad Co., 14 P. F. Smith 225 ; 2 Redfield on Railways 218; Oxlade v. Railway Company, 1 Com. B. N. S. 87 Eng. Com. L. Rep. 454.

But the proximate cause of the accident was the plaintiff's contributory negligence in placing himself in a position of peril contrary to the known regulations of the company. Even if the company had failed in duty in not providing him a seat, he was not justified in assuming an unnecessary hazard, and charging the results of it on the company. He should have appealed to the law for redress : Siner v. R. R. Co., 37 Law J. Ex. 98 ; Lucas v. R. R. Co., 6 Gray 64; Saunders on Negligence, 25–28 ; Stubley v. R. R. Co., Law Rep. 1 Exc. 13 ; Hagan v. R. R. Co., 10 W. N. C. 360. This was not the case of a passenger exposing himself to one danger by trying to avoid another. No urgent necessity required him to pass from car to car, much less to remain standing on the platform. He could not even hope to remedy his inconvenience, as he testified that he had already passed through the train and found all the cars crowded. His acts clearly amounted to contributory negligence which caused the accident, and the court should have affirmed our ninth point and have directed a verdict for the defendant: 8 Am. Law Rep. N. S. tit. " Negligence ;" Goshorn v. Smith, 11 Norris 435 ; Baker v. Fehr, 10 W. N. C. 57; R. R. Co. v. Armstrong, 2 P. F. Sm. 282; R. R. Co. v. Yerger, 23 P. F. Sm. 121 ; R. R. Co. v. McElwee, 17 P. F. Sm. 315 ; R. R. Co. v.

McClurg, 6 P. F. Sm. 294, 298 ; R. R. Co. *v.* Aspel, 11 H. 147 ; Lewis *v.* Balt. & Ohio R. R., 13 Amer. Law Reg. N. S. 285.

The requirements of care on the part of passengers on steam cars are more stringent than on street horse cars : Railway Co. *v.* Walling, 9 W. N. C. 470 ; Meesel *v.* Railway Co., 8 Allen 234 ; Lynam *v.* Railway Co., 114 Mass. 83.

*Edward A. Anderson* and *Francis E. Brewster* (*John H. Fow* with them), for the defendant in error.—There is no doubt that over-crowding a railway train, whereby injury happens to a passenger which would not otherwise have happened, is negligence on the part of the company : Wharton on Negligence § 64. The negligence was aggravated in this case, where the company permitted a horde of strangers to take passage upon a train furnished and intended for the limited number comprising the special excursion.

[SHARSWOOD C. J.—Is there any evidence that the railroad company sold additional tickets on the up train ?]

No direct evidence, but it was in evidence that there was sufficient seat room going down, and that the society settled with the railroad company after the down trip ; and it follows, as an irresistible inference, that the company sold additional tickets on the up trip. It is a presumption of law that all persons on a railroad train not in the employ of the company, are passengers who have paid a consideration : Creed *v.* R. R. Co., 5 Norris 139. Under the circumstances, the plaintiff was not guilty of contributory negligence. This is established by the following authorities : " It is not necessarily negligence for a passenger to ride upon the platform of a car. It certainly is not improper for him to do so if he cannot find a seat inside, and he would probably be justified in doing so if any nuisance were allowed inside the car, as drunken or obscene passengers, or quarrelling, or even smoking, if it were offensive to him :" Sherman & Redfield on Negligence § 284 ; Meesel *v.* R. R. Co., 8 Allen 234 ; Marquette *v.* R. R. Co., 33 Iowa 570.

Passengers are not to be deemed guilty of negligence for standing on platforms of cars in motion when there are no vacant seats within the cars : Willis *v.* Long Island R. R., 34 N. Y. 682.

If the plaintiff, in looking for a seat, took only such risks as, under the same circumstaces, a prudent man would take, he was not guilty of contributory negligence : Sherman & Redfield on Negligence, § 282.

A railroad company may not herd its passengers like cattle in crowded cars and then claim that the efforts of the passengers to find a more comfortable or tolerable position is such contributory negligence as will relieve it of liability. It has

[Camden & Atlantic R. R. Co. v. Hoosey.]

been held that even where a statute forbids a passenger to stand upon the platform, if the company's negligence force him there, he is not responsible, and the statute does not operate: Sherman and Redfield on Negligence § 284; Clark v. Eighth Avenue R. R. Co., 32 Barb. 657; Willis v. Long Island R. R. Co., supra. The questions of negligence and contributory negligence were properly submitted to the jury, and their verdict is conclusive: Stout v. R. R. Co., 17 Wallace 657; R. R. Co. v. Collarn, 73 Ind. 269; Leishman v. R. R. Co., 23 Law Times 712.

Mr. Justice STERRETT delivered the opinion of the court, February 20th 1882.

The single breach of duty with which the defendant below was specifically charged, as the only ground of liability to the plaintiff for the injury he sustained in falling off the platform of the car on which he was then standing, was the failure of the company to provide a sufficient number of cars to seat all the passengers on the train.

Without assenting to the broad proposition contended for, that a railroad company, using steam motive power, is bound absolutely and under all circumstances to provide every passenger on the train with a seat, it cannot be questioned that, as a general rule and under ordinary circumstances, it is the duty of such company to provide suitable car accommodations and seats for those whom it undertakes to carry; and if a passenger, exercising reasonable care and prudence, is injured in consequence of the company's neglect of duty in that regard, the latter is liable to respond in damages for the injury thus occasioned solely by its own negligence. There appears to be nothing in the circumstances of this case to exempt the company from that general rule of duty; and if its negligence was the proximate cause of the plaintiff's injury, the liability of the company would necessarily follow, unless the plaintiff himself was guilty of negligence which contributed thereto. His contention was that, in common with many other passengers, he was unable to procure a seat, and while searching for one he was thrown from the platform of one of the cars, and thus sustained the serious injury which resulted in the loss of his arm. The over-crowded condition of all the cars composing the train, and the consequent inability of the plaintiff and others to procure seats, were facts clearly proven.

Assuming for the present that the company was justly chargeable with negligence resulting in injury to the plaintiff below, and that under the circumstances he was not guilty of contributory negligence in passing from car to car in search of a seat while the train was in rapid motion, can it be pretended

3 OUTERBRIDGE—32

[Camden & Atlantic R. R. Co. *v.* Hoosey.]

that it would not be gross negligence in him to voluntarily take a position near the outer edge of the platform and remain there until, by an ordinary jolt of the car, he lost his equilibrium and was thrown off? This is precisely what the evidence as to the plaintiff's position at the time of the accident clearly establishes. Apart from his own testimony, there is very little evidence tending to show precisely where he was at and shortly before that time; and there is certainly nothing that militates against his own version of what then and there occurred. He testified in substance that on entering the cars at Atlantic City and finding the rear one over-crowded he pushed his way forward, searching in vain for a seat, until he reached the front car. After remaining there a short time, he started back: and quoting from his own testimony as found in the bill of exceptions, he says: "I left that car because I was tired standing there; had been there seven or eight minutes; started back through the cars; went through some ten or twelve cars; stopped several times going through; can't recollect time it took to go through back; could not get through for crowd; it was pretty near the same going back as coming through; I stopped outside on platform; rear platform of fourth or fifth car, right outside the door; stood on one side; the right hand side coming up. When I got out first I had hold of a little rail or something across the window; I held on to the little rail across the window to keep from falling off; let go to go through the cars; I was standing there a minute or two or so; it was two minutes to the best of my knowledge; can't tell if it was longer; when I left I started to go through, when the car got a jolt, and somebody struck me; could not count how many passengers passed through while I was on the platform; they were coming in the opposite direction, up towards the engine, and some were going through the same way, towards the rear of the train; can't say whether the car door of the car I passed out of was open; when I went out the door of the opposite car I am positive sure was open; saw parties coming from the opposite car; I did not stand aside inside of car because I could not see them well, and because I wanted to go through myself; I came out and stood with my back against the car, and hand on the rail, resting myself; I was leaning with my back against the car, and my hand behind me; people were passing through into the car I left; there was a crowd; I left that car to go into an adjoining car; while standing there the car got jolt, and somebody behind me struck me and staggered me; the jolt and it had something to do with it, can't tell whether the jolt, without the other, would have thrown me off; as soon as I got the jolt I made a grab with the right hand, and missed, and caught with the left the rail on the platform; there is a similar rail on the body of the

[Camden & Atlantic R. R. Co. v. Hoosey.]

car, to assist people in and off; I tried to get hold of the rail on the body; I was thrown partly round, and caught the dasher rail with my left hand; I was thrown with my chest towards the inside track; the train was traveling very rapidly; my arm was mangled."

It is very evident from the plaintiff's own statement that, at the time of the accident and for some minutes before, he was not in the act of passing from one car to another in search of a seat: on the contrary, he was standing quite near the edge of the platform with his back to the end window of the car. He was not only in a position of known danger, but was there voluntarily and in disregard of the rules of the company. There is nothing in the testimony from which a jury would be justified in coming to any other conclusion. While he was thus standing on the platform, persons passed from one car to the other in both directions, and there is nothing whatever to show that he could not have gone into the next car if he had been so disposed. Neither he nor any other witness pretends to say it was necessary for him to stop and stand on the platform.

In the seventh point of the defendant below, the court was requested to charge "That even if a search for a seat was the real purpose of the plaintiff in going out on the platform, and even if it were not negligence for him to have crossed from car to car for that purpose, yet, if the jury believe from the evidence that he lingered on the platform, instead of immediately crossing, the verdict should be for the defendant." The learned judge, in affirming this proposition, added the qualifying words, "unless compelled thereto by circumstances." The jury was thus authorized to inquire whether or not the plaintiff was compelled by circumstances to linger on the platform. We see nothing in the testimony to warrant the submission of this inquiry to the jury. As already intimated, there was not a particle of testimony from which it could be reasonably inferred that plaintiff was compelled to take or retain the position he did on the platform. Having shown by his own testimony that at the critical juncture he was in a position where no one of ordinary prudence should have placed himself, it was incumbent on him to prove that he was there from necessity and not from choice. While the latter was clearly shown, there was no testimony tending to prove the former. The point should have been affirmed without the qualification complained of. But, for reasons already suggested, we think the court should have gone further, and instructed the jury as requested in defendant's ninth point, which was: "That the evidence shows negligence on the part of plaintiff which contributed to produce the injury complained of, and therefore he cannot recover."

The dangerous position on the platform in which the plain-

[Bentley's Appeal.]

tiff voluntarily placed himself, while the cars were in rapid motion, was undoubtedly the immediate cause of his being jolted off. If there had been any testimony from which it could have been reasonably inferred that he was there from necessity and not from choice, it would have been a question for the jury: but, in the absence of such evidence, it was error to refuse the point, and leave it to the jury to determine whether he was or was not guilty of contributory negligence.

Of all the passengers on a long train of twenty over-crowded cars the plaintiff was the only one who appears to have been injured. If he had submitted, as many others did, to the inconvenience of standing inside the cars, or if he had been guilty of no greater imprudence than passing from car to car, while the train was in rapid motion, it is not at all probable he would have been injured. His much-to-be-regretted misfortune was the result of his own carelessness. This was clearly proved by uncontroverted testimony, from which no other conclusion could reasonably be drawn.

Judgment reversed.

MERCUR, GORDON and TRUNKEY, JJ., dissented.