## Abbie E. Jackson *v.* The Philadelphia Traction Company, Appellant.

[Marked to be reported.]

*Negligence—Evidence—Contributory negligence.*

In an action against a street railway company to recover damages for personal injuries resulting to plaintiff, a woman, from her falling from an open street car, it appeared that at the time of the accident plaintiff was riding in an open summer car with seats running lengthwise across the car. Some time previous to the accident the car was running rapidly, and, at a point two hundred and thirty feet from where the accident occurred, it collided with a cart and mule, but at the point of the accident it was under control and going at a moderate speed. Witnesses for the plaintiff testified that they saw her fall from the car, but gave no evidence of any act or omission which induced her fall. The uncontradicted testimony of witnesses for the defendant was, in effect, that at the time of the accident plaintiff was standing at the end of the seat, with a market basket on her arm, although she had been warned to keep her seat. *Held*, (1) that there was no evidence of defendant's negligence; (2) that plaintiff was at least guilty of contributory negligence; and (3) that binding instructions should have been given for the defendant.

Argued March 25, 1897. Appeal, No. 33, Jan. T., 1897, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1894, No. 256, on verdict for plaintiff. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries. Before SULZBERGER, J.

The facts appear by the opinion of the Supreme Court.

Defendant's point and answer thereto among others were as follows:

5. Under all the evidence in this case your verdict must be for the defendant. *Answer:* That point is declined.

Verdict and judgment for plaintiff for $5,500. Defendant appealed.

*Error assigned* among others was above instruction, quoting it.

*Thomas Leaming*, for appellant.—It has been repeatedly held by this court that more than a scintilla of evidence must exist to justify a finding by a jury: Penna. R. Co. v. Fries, 87 Pa. 234; Frazier Bros. v. Lloyd, 23 W. N. C. 178; Brown v. French, 104 Pa. 604.

There is no affirmative proof that the negligence alleged was the cause of the injury, and there is no presumption to take the place of proof: Laing v. Colder, 8 Pa. 479; Penna. R. Co. v. MacKinney, 124 Pa. 462; Penna. R. Co. v. Raiordon, 119 Pa. 577; Herstine v. Lehigh Valley R. R. Co., 151 Pa. 244; Penna. R. Co. v. Kerr, 62 Pa. 353; Wood v. Penna. R. Co., 177 Pa. 306; Hoag v. L. S. & M. S. R. R., 85 Pa. 293.

*A. W. Horton*, for appellee.—The case of Laing v. Colder, 8 Pa. 479, and kindred cases cited by counsel for appellant are not applicable, because here no extraneous causes beyond the control of the defendant produced the accident. It was caused solely by the improper conduct of the defendant's employees in charge of the car.

The question of proximate cause was for the jury: 2 Thompson on Negligence, 1100; Haverly v. R. R., 135 Pa. 50; Penna. R. Co. v. Hope, 80 Pa. 373.

OPINION BY MR. JUSTICE GREEN, July 15, 1897:

The body of Mrs. Jackson was found lying on the street at the intersection of Sansom and Twenty-second streets, Philadelphia, where the accident occurred, and it was there that she fell from the car. This was testified to by her husband who was riding in an express wagon on Sansom street west of Twenty-second, and about seventy-five feet distant, when, as the car passed up on Twenty-second, crossing Sansom, he saw a woman fall from the car. This is what he said: "I saw the car coming at full speed and about the center, as near as I could judge, of Sansom street, I saw a lady go out the side, and Mr.

Rothfuss, that was sitting on the seat alongside of me, says to me, 'Look at that woman go out of the car.' I says, 'Yes she has got a bad fall.' . . . Q. What did you see? A. I saw the lady go out of the—fall out of the car sideways. . . . I saw the car going up Twenty-second street, north on Twenty-second street, at I should judge about its full speed, and I saw a woman fall out of the car on the east side." Peter Rothfuss, who was with Jackson in the express wagon said, "I was sitting on the front of the wagon and was looking toward Twenty-second street, and I saw the car flying past, and as it did, I says, 'Look at that car, there goes a lady out,' and I saw the lady falling towards the eastern side of the street." There was some other evidence to the same effect which it is not necessary to repeat. So that it was proved by the plaintiff's witnesses and denied by none, that the place where Mrs. Jackson fell from the car was at the intersection of Sansom and Twenty-second streets, and that must be taken as an established fact. This being so, it is also a demonstrated fact that she was not thrown from the car by the collision of the car with the cart and mule, which occurred at the curve from Walnut street into Twenty-second street. It was admitted on the trial that the distance from Walnut street to Sansom street is two hundred and thirty feet. The car traveled that distance over a straight track without any obstruction or collision of any kind until it was stopped above Sansom street, at about one third of the distance between that street and Chestnut, the whole distance between those streets being also two hundred and thirty feet. The contention that the plaintiff, Mrs. Jackson, was thrown off the car by the sudden stop is entirely untenable, because she fell off before the car stopped, while it was still in motion. The witness, Thomas Smith, testified that he stepped off the car just at Sansom street while it was still in motion, and just as he stepped off he heard a crash of breaking glass and, looking around, saw the plaintiff lying in the street. The car was then going at moderate speed, and stopped above Sansom street as before stated. The injury to Mrs. Jackson was due, solely, to her falling or moving from the car. The only witnesses examined for the plaintiff as to her falling from, or leaving, the car, were herself, her husband and Peter Rothfuss who was with her husband. She testified that she knew nothing about it, that the next thing she knew after the collision she was lying in the

street, and some one asked her if she was hurt. The witness Rothfuss was asked, "State all that you observed in reference to the woman from the time you first saw the car until the accident had happened. A. I just merely saw the lady falling out of the eastern side of the car, and the basket going in the middle of the track, and the bottles broke: she had a basket, and I saw the basket falling down and her after it." Her husband testified as before stated, and in substance his testimony was the same as that of Rothfuss. No other witnesses examined for her saw the fall, or saw her at all on the car. Upon all the testimony on her behalf there is nothing to show how her falling from the car was induced or why she fell.

On the part of the defendant, however, there were two witnesses, both of them passengers, who saw her after the collision and before the fall, and at the instant before the fall. One of them, Thomas Smith, was asked: " Q. At what time, if at any time, did you see this lady who was finally injured? A. When I was standing on the footboard, I looked towards the rear of the car and saw this lady standing up between two seats, standing on the floor of the car, with a market basket on her arm. Q. And what if anything did you say or did you hear anybody else say to her between Walnut and Sansom streets? A. I heard somebody warn her, tell her to sit down, to keep her seat. Q. What did she do, if anything, that you observed after that? A. After that I faced forward and stepped off into the street; just as my foot touched the street, I heard a crash behind me, looked around, and the lady was in the street with her basket lying in the street. Q. A crash of what? A. A crash of breaking glass."

The other witness, William R. McAdam, also a passenger, was asked: " Q. Did you see this lady, the plaintiff here, or any other ladies on that car do any particular thing? A. I saw a lady in front of me, and after we passed the corner of Chestnut —Q. Walnut street? A. Twenty-second and Walnut streets; I think the lady was standing up. Q. What did she do? A. I did not take any particular notice at that time. Q. What did you see her do afterwards? A. I did not see her do anything. I was not watching her then. Q. What part of the car was she standing on? A. Immediately in front of her seat; it seemed as if she had just raised up. Q. Did you notice anything about

a basket, or anything that she had?   A. Not until afterwards, no.   Q. Did you hear any noise, or hear anything in connection with the lady or her basket?   A. Nothing at all until the car was nearly stopped.   Q. What did you see then?   A. I saw the lady lying on the pavement, on the east side, to the east of the car, and near her was lying her basket.   Q. What did it have in it, if anything?   A. It had glass in it; I could not tell because the lid was on it, but I could tell from the rattling of the glass, the broken pieces, that there was glass there.   Q. Did your car strike anything at all, do you know, after it left the corner of Walnut street, except the cart which had been struck?   The Court: There is no evidence that it did, is there?   Mr. Horton: No, we do not contend that it did."

These five persons, the plaintiff, her husband, Rothfuss, Smith and McAdam, are all the witnesses who testify to the fact of the fall.   It must be borne in mind that the plaintiff was in the car uninjured, and in no more danger of injury than any other passenger, after the car had left Walnut street, and after the collision with the cart.   The effect of whatever occurred on Walnut street, and up to and after the collision, had transpired and no one was injured.   The rapid progress of the car had been arrested and it was under control.   The injuries inflicted by the collision did not affect the plaintiff.   At the moment of her fall the car was in quite moderate motion, and stopped entirely within two or three of its own lengths.   How then is it possible to hold the defendant responsible in damages for the plaintiff's fall?   Where is there any evidence of negligence which caused her fall?   Neither she nor any of her witnesses gave any explanation as to how or why it occurred.   They do not prove any act of negligence by which it was occasioned.   It is of no consequence to inquire as to the action of the motorman or conductor on Walnut street, or at or before the collision, because those matters had all passed and the plaintiff was uninjured.   So far as the testimony on her side of the case goes nothing but the fact of her fall was proved.   No evidence was given of any act or omission which induced her fall.   But when the testimony of the other two witnesses is examined there is no difficulty in accounting for the fall.   They both say that she was standing on her feet on the floor of the car, and one of them says she had a market basket on her arm.

She had already testified that when she entered the car on Walnut street she took the end seat on the north side of the car, and all the witnesses who spoke of the subject said, the car was an open one with the seats running lengthwise across the car. There was no contradiction of the testimony of the defendant's witnesses as to her standing position just before she fell. We have then, upon the undisputed testimony, the case of a woman loaded with a market basket, who, having been sitting at the end of the seat of an open car, rising from her seat and standing on the floor of the car, and, being warned to resume her seat, not heeding the warning, and suddenly falling from the car, and thus receiving her injury. A perfectly rational and natural cause of her falling is thus shown by testimony which fully accounts for it, and which is entirely undisputed. Had she remained seated as she was after she entered the car, and as the other passengers did, she would not have been injured. She was in an exposed position where she might fall if she stood on her feet, but nevertheless she did so, although she was warned to resume her seat, and of course she took the risk of the consequences. We are quite unable to discover any negligence of the defendant which produced her fall, but we do see abundant testimony, entirely uncontradicted, which not only accounts for her fall, but establishes her own contributory negligence as the cause of it. Entertaining these views of the testimony we are of opinion that a binding instruction should have been given to the jury to find a verdict for the defendant, as requested by the defendant's fifth point.

Judgment reversed.