Edward Thayne v. The Scranton Traction Co., Appellant.

*Street railway—Passenger on platform—Contributory negligence.*

The platform of an electric car is a place of known danger, and if, while there, a passenger, who could have found a seat within, is injured, he is guilty of contributory negligence provided his presence on the platform contributed to the injury which he received.

Argued Jan. 13, 1898. Appeal, No. 26, Jan. T., 1898, by defendant, from judgment of C. P. Lackawanna Co., Sept. T., 1896, No. 930, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, ORLADY, SMITH and PORTER, JJ. Reversed. SMITH and ORLADY, JJ., dissent.

Trespass. Before SEARLE, P. J., of the 34th judicial district, specially presiding.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $850. Defendant appealed.

*Error assigned* among others was refusal of binding instructions for defendant.

*William H. Jessup*, with him *William H. Jessup, Jr.*, for appellant. Now we claim that in the present state of the law and the present conditions of electric motive power, it is negligence per se for a passenger to ride upon the platform of an electric car when he is not compelled to do so by the crowded condition of the inside of the car.

In the early history of the decisions, when only the slow moving horse cars were used, a contrary opinion seemed to prevail; but in the change of the motive power of street cars a different rule seems to prevail: Winter v. Railway Co., 153 Pa. 26.

The following cases were cited by counsel as supporting the above proposition and as evidencing the trend of the law in adopting itself to changing conditions: Beach on Con. Neg. 158; Railroad Co. v. Hoosey, 99 Pa. 492; Railway Co. v. Carroll, 5 Ill. App. 201, citing R. R. v. Johnson, 38 Ga. 409; Hickey v. R. R., 96 Mass. 429; Booth's Street Railway Law,

464; Aiken v. Railway Co., 142 Pa. 47; Railroad Co. v. Langdon, 92 Pa. 21; Mann v. Traction Co., 175 Pa. 122; Railroad Co. v. Greiner, 113 Pa. 600; Railroad Co. v. Jones, 95 U. S. 439; Downley v. Hendrie, 46 Mich. 498.

*John P. Kelly,* with him *Joseph O'Brien,* for appellee.—We contend that the evidence does not disclose any negligence whatever on the part of the plaintiff, much less contributory negligence. He got upon the platform of the car, and stood there holding on to an iron or brass rod to steady himself, and prevent his being thrown off by the jolting or other ordinary motion of the car. It was the rear platform, the point furthest away from the collision. While a person who voluntarily rides upon the platform of a street car, assumes the ordinary risks incident to such a position, such as the ordinary jolting, swinging around curves, etc., it has never been held, as far as we are able to learn, to be negligence per se. And an examination of the authorities cited by counsel for appellant, will disclose, that the rulings which hold a passenger riding upon a platform of a car, guilty of contributory negligence, are all based upon the fact that the injuries were caused by reason of the passenger being in such position, and that the injuries received were such as resulted from the ordinary dangers of the position. In support of these propositions we cite the following authorities: Wagner v. R. R., 97 Mo. 512; McGee v. R. R., 92 Mo. 208; Muehlhausen v. R. R., 91 Mo. 332; Burns v. R. R., 50 Mo. 139; Huelsenkamp v. R. R., 34 Mo. 45; s. c. 37 Mo. 537; Ashbrook v. R. R., 18 Mo. App. 290; Gerstle v. R. R., 23 Mo. App. 361; Smotherman v. R. R., 29 Mo. App. 265; Tuley v. R. R., 41 Mo. App. 432; Wollery v. R. R., 107 Ind. 381; R. R. v. Bisch, 41 Am. & Eng. R. R. Cases, 89; Dewire v. R. R., 37 Am. & Eng. R. R. Cases, 57; Clark v. R. R., 36 N. Y. 135; Fleck v. R. R., 134 Mass. 480; Downey v. Hendrie, 46 Mich. 498; President v. Cason, 20 Atl. Rep. (Md.) 113; Beach, Con. Neg. p. 303, et. seq.

This court declines to say that it was negligence per se on the part of the passenger to ride upon the platform of a street car: Bard v. Traction Company, 176 Pa. 97.

OPINION BY PORTER, J., October 10, 1898:

The plaintiff, a man of fifty-six years, was a passenger on a

closed car of the defendant company. He admits that he took a position on the back platform, with knowledge that there were vacant seats within the car. He stood holding to a metal rod which protected the back window when a collision occurred. The effect of the collision was to throw the plaintiff first forwards and then backwards, causing him to strike the iron dashboard with his back and to fall over the dashboard into the street, whereby he claims to have sustained injuries to his back and to his bladder. The case thus presents a voluntary occupancy of the platform of an electric car by a passenger having knowledge of the vacancy of seats within the car.

The defendant company offered no testimony to rebut the presumption of negligence on its part, but claims that the court below should have instructed the jury for the defendant on the ground of the plaintiff's contributory negligence.

The decision of this case involves two questions. First, was the plaintiff negligent in remaining on the platform, under the circumstances? and second, if so, did his negligence contribute to his injury? Both of these questions must be determined affirmatively in order to sustain the position taken by the defendant.

We have not been furnished with any authority in Pennsylvania which decides the first question above stated, as applied to an electric car. The Supreme Court have held that it is negligence to ride in the baggage car of a railroad train (P. R. R. v. Langdon, 92 Pa. 21), and to ride on the platforms of the cars of such a train. Mr. Justice STERRETT, saying: " There was not a particle of testimony from which it could be reasonably inferred that the plaintiff was compelled to take or retain the position he did on the platform, having shown by his own testimony that at the critical juncture he was in a position where no one of ordinary prudence should have placed himself. It was incumbent on him to prove that he was there from necessity and not from choice : " C. & A. R. R. v. Hoosey, 99 Pa. 492. On the other hand, the same court has held in Passenger Ry. v. Boudrou, 92 Pa. 475, that a passenger injured while upon the rear platform of a crowded street car was not estopped from recovering because of contributory negligence. Referring to this case in Bard v. Traction Co., 176 Pa. 97, the court say: " This court declined to say that it was negligence per se

on the part of a passenger to ride upon the platform of a street car." Again in Railway Co. v. Walling, 97 Pa. 55, it has been held that it is not contributory negligence per se for a passenger to ride on the step of the front platform of a crowded street railway car with the assent of the conductor or driver. But Mr. Justice TRUNKEY gives a reason: " The companies do not consider such practice dangerous, for they knowingly suffer it and are parties to it. . . . The risk in travelling at the rate of six miles an hour is not that when the rate is sixty or even thirty. An act which would strike all minds as gross carelessness in a passenger on a train drawn by steam power, might be prudent if done on a horse car. . . . In absence of express rules every passenger knows that what might be consistent with safety on one, would be extremely hazardous on the other."

In Jackson v. Traction Co., 182 Pa. 104, it was said to be contributory negligence on the part of a woman sitting at the end seat of an open electric car, to stand up with a basket on her arm,—she while in that position, having fallen or been thrown from the car.

So far, therefore, as our own state is concerned it would seem that the responsibility of a passenger occupying the platform of a trolley car has not been determined. Is the character of the risk of such occupancy that of the railroad or the horse car?

The electric car and the horse car have points of similarity. They operate upon the surface of streets and carry passengers short distances for low fares. Here their likeness ceases. The electric motor has brought upon the crowded city streets as well as upon many of the country highways, cars or trains with a speed and size approaching those of the steam road; subject in their passage to grade crossings of other cars at well nigh every street corner and of vehicles and foot passengers at every foot of their course and on every hand; running at short intervals of time and space making collision peculiarly likely; subject to frequent and abrupt starting, stopping and turning and to many switches with possibility of derailment. All of these things make transportation upon the electric car quite as perilous as upon steam roads and leave no room for comparison with the slow, deliberate, and easily controlled transporta-

tion by horses. Under these circumstances, is the passenger who rides upon the platform of the trolley to be held to the rule applicable to steam roads or to the horse car?

This change in the character of surface transportation has had an effect on the use of the highways. The rule of stop, look, and listen of the steam road crossing has been applied in modified form to the electric road. The language of Mr. Justice McCollum in Winter v. Railway Co., 153 Pa. 26, may be quoted: "The substitution of cables and electric cars for the horse car and the omnibus is a change which renders impracticable and dangerous certain uses of the streets which were once permissible and safe. It introduces new conditions, the nonobservance of which constitutes negligence. It is the duty of property owners on streets occupied by cable and electric lines of railway, and of persons crossing or driving upon such streets to recognize and conform to these conditions. The risk of a crossing or possession of the tracks of a railway operated by horse power, is not to be compared with the peril involved in a crossing or occupancy of tracks of a steam, cable or electric railway. The conditions are notably unlike in the size, weight, and speed of the cars and in the power by which they are moved."

The passengers upon these modern vehicles (put by the learned justice in the same category with those propelled by steam), must be held to the obligations imposed by the new conditions. If the baggage car and platform of the steam road are known places of danger, to at least the same degree are the platforms of the electric car. We reach the conclusion then that the platform of an electric car is a place of known danger, and if, while there, a passenger, who could have found a seat within, is injured, he is guilty of contributory negligence, provided his presence on the platform contributed to the injury which he received.

"The test for contributory negligence," says Mr. Justice Gordon, in Creed v. P. R. R., 86 Pa. 139, "is found in the affirmative of the question, Does that negligence contribute in any degree to the production of the injury complained of? If it does, there can be no recovery; if it does not, it is not to be considered." See also L. V. R. R. v. Greiner, 113 Pa. 600.

Did the plaintiff's position on the platform of the car contribute to his injury? He testifies, as do his physicians, that his injury was caused by striking his back upon the platform railing. The character and cause of the physical injury were thus determined by the plaintiff's own testimony and that of his witnesses to be due to his position on the platform. Had he been within the car it cannot be assumed that he would have been injured in the same manner and to the same extent, or that he would have been injured at all. When the plaintiff boarded the car he was accompanied by a friend who took a seat within the car and was uninjured by the collision. Again, the plaintiff's evidence is that the passengers inside the car were " shook up and scared, and some hurt," but McAvoy, the plaintiff's friend, who was in the car and had the better opportunity of knowing what befell the other passengers, says: " The people that was inside, when they seen them coming, they jumped up and run to the back of the car, it shook them up pretty well in there, some of them was thrown down I think, I can't say for sure." On all the testimony it seems plain that the peculiar injury complained of by the plaintiff was contributed to, if not wholly caused by, his presence on the platform, and thus convicts him of such contributory negligence as is a bar to recovery.

The reasons above given lead us to the conclusion that the duty of the trial judge was to direct the jury to find for the defendant.

The judgment is therefore reversed.

Smith, J., dissenting:

Whatever may be held with respect to a car operated by steam power, the courts of this state have never decided that it was negligence per se for a passenger to ride on the platform of a street car propelled by animal power, cable or electricity, while there are repeated decisions that it is not negligence per se to ride on the platform of a horse car. As to cable and electric cars, the platform is not recognized by the public in general as a place of peculiar danger, at least to male adults, and it is a fact of common knowledge that multitudes ride there, often from preference, with perfect safety, and with the assent of the carriers. In the face of this experience, and of

this consensus of the popular judgment, to declare it negligence per se for a passenger to ride on the platform when he may ride inside, is to hold the public to a measure of duty productive of annoyance and inconvenience, and in no sense called for in the interest of public safety. The discussion of the point by the Supreme Court, in Bard v. Traction Co., 176 Pa. 97, quite clearly indicates that that tribunal does not consider it negligence per se on the part of a passenger to ride upon the platform of a street car. Further than this, it is an invasion of the province of the jury, for which, in my view, there is no warrant in either authority or reason.

The parallel between locomotive and electric roads is limited both in character and effect. Occupancy of the platform of a car by passengers on a steam road has neither custom nor the consent of the carrier to justify it, while both of these unite in approving such use of the platform of street cars. The rules applicable to crossings on locomotive roads apply only in part to street railway crossings; what would be obvious negligence at the former is not necessarily such at the latter: Omslaer v. Traction Co., 168 Pa. 519; Callahan v. Traction Co., 184 Pa. 425. For like reasons, an act of a passenger on a car propelled by steam, which would be deemed negligence per se, would not necessarily be negligence on a trolley car. While the conditions in the two cases correspond in part, there are essential differences, involving a difference in the measure of care demanded, and leading to different conclusions on the question of negligence. The passenger may well be held to a fixed measure of care on a steam car, as to some matters in which, on a trolley car, a discretion may safely be permitted. Among these is the practice, common on all street cars, of riding on the platform.

There are, indeed, certain dangers to which a passenger on the platform is exposed, from which one inside is exempt. So, also, one who stands in the aisle is exposed to dangers which he would escape if seated. But these arise from the movement of the car under the ordinary conditions of street railway propulsion; its speed, its changes of direction, its stopping and starting, etc., and from the condition of the road as to track, switches, curves, etc. So far as these dangers are brought into existence by the ordinary operation of the railway, and

not by the negligence of the railway company, they impose on
the carrier no responsibility. But as to risks created by the
negligence of the carrier, the public safety demands a different
rule.

In the earliest reported case on this subject (Railway Co. v.
Boudrou, 92 Pa. 475), the passenger stood on the rear platform
of a crowded horse car, and was struck by the pole of the car
following. The supreme court approved the instruction, by the
trial judge, that if the jury found that the plaintiff was negli-
gent in standing on the rear platform, and yet found that the
collision could not have happened but for the negligence of the
driver of the rear car, the plaintiff's negligence was remote, and
not a bar to his recovery. In Railway Co. v. Walling, 97 Pa.
55, both platforms of a horse car being crowded, the passenger
got on the step of the front platform, and at a curve was thrown
from the car. The Supreme Court held that the question of
negligence was for the jury. In Reber v. Traction Co., 179
Pa. 339, there being no room inside a trolley car, the passenger,
by direction of the conductor, stood at the outer edge of the
platform, with his back to the car and his right hand grasping
a rail behind him. As the car turned a curve, at high speed,
he lost his hold on the rail and was thrown off. The Supreme
Court held that for him to stand on the platform, under the
circumstances, was not negligence per se, and that the question
of negligence on the part of both carrier and passenger was for
the jury.

Another line of cases illustrates the carrier's freedom from
responsibility for obvious dangers incident to the position of a
passenger not seated in the car, and not arising from the
carrier's negligence. In Aiken v. R. R. Co., 142 Pa. 47,
though there was abundant room inside a horse car, the pas-
senger chose to ride on the step, and was struck by a post near
the track, with the existence of which he was familiar. In
Mann v. Traction Co., 175 Pa. 122, the only passenger on a
horse car took the driver's seat, a high stool, with narrow base,
on the front platform, and was thrown off at a switch. In
Bard v. Traction Co., 176 Pa. 97, the inside and rear platform
of a trolley car being crowded, the passenger stood on the rear
bumper—a place under no circumstances designed for pas-
sengers—and was injured by the car following. In Jackson v.

Traction Co., 182 Pa. 104, a passenger on an open trolley car, with seats running transversely, unnecessarily stood up, with a loaded market basket on her arm, at the end of the seat, and from some unexplained cause fell out. In none of these cases was the carrier guilty of negligence, and in each the passenger needlessly exposed himself to an obvious danger arising from the necessary conditions of street car propulsion.

The result of all the authorities, as it presents itself to my mind, may be thus stated: For a passenger unnecessarily to ride on the platform of a street car, is not negligence per se. When, however, he does this, he takes upon himself all risks that can reasonably be foreseen as attending his act, but not risks arising from the carrier's negligence, which he cannot foresee. He assumes all risks due to the movement of the car and the character of the road, but not the risk of collision with other cars of the carrier. While the carrier has a right to require a passenger who rides on the platform to take all risks necessarily incident to that position, the passenger has a right to assume that the carrier will operate its road without subjecting him to other risks. The passenger is required to guard himself against risks arising from the necessary conditions of street car propulsion; the carrier is required to guard him against dangers that might arise from want of due care in the operation of its road. Negligence on the part of either is the want of the care demanded by the circumstances. When there is negligence by the carrier, and the only negligence imputed to the passenger is the act of standing on the platform when he might have ridden inside, it is for the jury to determine whether, under all the circumstances, including the speed of the car, the character of the road as to grade, track, switches, curves, etc., this contributed to his injury.

In the present case, the plaintiff was a passenger on the platform, with the knowledge, at least, of the conductor. Whether the conductor requested him to go inside is a point in dispute, the evidence being contradictory. If the conductor made this request, he had a right to enforce it or to eject the plaintiff for noncompliance: McMillan *v.* Railway Co., 172 Pa. 523. The plaintiff denies emphatically that such a request was made, and the jury have found this question in his favor. No rule or posted notice of the company forbade riding on the

platform because of danger or inconvenience, and the conductor gave no reason for his alleged request. According to his own statement he acquiesced in the plaintiff's action. The plaintiff, "if he chose to stand on the platform, was held to a high degree of care to avoid the known dangers of his position, and took all the risks of the position which were reasonably to be apprehended:" Reber v. Traction Co., supra. But assuredly the carrier cannot contend that the risk of a collision through its negligence was reasonably to be apprehended. Such a risk was not among those assumed by the passenger; it was a danger against which it was the carrier's duty to guard him.

As to the question of remote and proximate cause, "If two distinct causes are operating at the same time to produce a given result, which might be produced by either, they are concurrent causes. But if two distinct causes are successive, and unrelated in their operation, they cannot be concurrent. One of them must then be the proximate and the other the remote cause. When they stand in this relation to each other and the result to be considered, the law regards the proximate as the efficient and responsible cause, and disregards the remote:" Herr v. Lebanon, 149 Pa. 222. In the present case, the collision and the passenger's presence on the platform were concurring conditions under which the passenger was injured. But they were not concurrent causes, either of which might have produced the injury. Though coincident, they were distinct and unrelated. The passenger's position on the platform in no sense tended to cause the injury. Whether it exposed him to an injury more serious than he might have received if seated in the car, is wholly conjectural. It appears that the conductor and two other persons were on the same platform with the plaintiff but escaped injury. Here, as in Railway Co. v. Boudrou, supra, the collision could not have happened but for the carrier's negligence. It must, therefore, as in that case, be deemed the proximate cause of the injury. Such negligence as there may have been on the passenger's part was but a remote cause, and is not a bar to recovery here.

In my view, the instructions with which the case was submitted to the jury embodied an accurate statement of the law on the questions involved. The negligence of the carrier cannot be denied, and the jury have found that the passenger's

position on the platform, if negligence on his part, did not contribute to the injury he received. The judgment therefore should be affirmed.

ORLADY, J., concurs in this dissent.