## McCaw *v.* Union Traction Company, Appellant.

*Negligence—Street railways—Overcrowding of cars.*

Where a street railway company permits its cars to be overcrowded, additional care and precaution must be exercised by the conductor and motorman to protect the passengers against resultant danger.

A street railway company cannot invite or permit passengers to board its cars beyond their normal capacity and not be responsible for danger which necessarily results from their overcrowded condition.    If a passenger is permitted to enter a car having no vacant place except on the platform and the conductor accepts his fare, he is justified in standing on the platform if he exercises proper care in doing so; and by receiving him the carrier undertakes and gives him assurances that it will take care of him and guard him against accident as far as the circumstances permit.

In an action against a street railway company by a passenger to recover damages for personal injuries, the evidence for the plaintiff, although contradicted in many particulars, tended to show that when plaintiff entered the car, he took a seat, and that subsequently he arose and gave his seat to an elderly woman and stood in the aisle near the front door.    Afterwards the car became very much crowded, and plaintiff, at the conductor's request, went out upon the front platform and stood on the extreme end of one side of it, supporting himself by holding the brass bar under the

window. While in this position the car was run very rapidly over the tracks of a steam railroad and down a grade from the tracks. The conductor who had preceded the car at the crossing, jumped upon the front steps on the side opposite to where the plaintiff was standing, and in doing so pushed other passengers who were on the platform, against the plaintiff, causing him to lose his hold on the bar, and fall under the wheels of the car. *Held*, that the case was for the jury, and that a verdict for plaintiff should be sustained.

Argued Jan. 12, 1903. Appeal, No. 140, Jan. T., 1902, by defendant, from judgment of C. P. No. 2, Phila. Co., May T., 1900, No. 861, on verdict for plaintiff in case of Robert Mc-Caw v. Union Traction Company. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before PENNYPACKER, P. J.

The circumstances of the accident are detailed at length in the opinion of the Supreme Court.

Defendant presented these points.

10. Under the law and the evidence in this case the verdict must be for the defendant. *Answer :* I decline that point. [1]

4. The only negligence alleged is that the conductor's act in mounting the west step, which nobody was on, resulted in pushing one of the eight persons on the platform (which it is uncontradicted will accommodate a larger number) and thereby pushing the plaintiff off the east side. This was not a natural or probable result of the conductor's lawful act nor was his act the proximate cause of the accident, and the verdict should be for the defendant. *Answer :* I decline that point. [2]

5. It is contributory negligence per se to remain on the front platform of a moving trolley car when there is room inside. It is undisputed the plaintiff left a seat and went out upon the platform. The conductor's request is no excuse for doing that which is negligence per se and the verdict should be for the defendant. *Answer :* I decline that point. [3]

The court charged, inter alia, as follows :

[He would be entitled in the first place to his loss of earnings. He has told you (and there is no contradiction of that testimony) that he was earning at the rate of $9.00 or $10.00 a week and he says that up to this time, in consequence of the loss

of his leg, he has not been able since to earn anything. That becomes a matter of very easy computation. You can tell readily how much there has been lost.

He would also be entitled to what would compensate him for his loss of earning power, and that becomes a matter of very great difficulty. You will have to consider in the first place how long he is likely to live and then you will have to consider how long his earning capacity is likely to continue, because as men get older they lose the capacity to work; and you will also bear in mind that it would not do simply to ascertain the number of years and then multiply that by the sum which he earns in one year and give that amount to him, for this reason —it would be giving to him now what he would not earn perhaps for a number of years to come. What you have to do is, taking all of these matters into consideration, to endeavor to arrive at a sum which given to him now would be compensation for his loss of earning power.] [4]

Verdict for plaintiff for $16,000. Judgment was entered for $10,000, all above having been remitted. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*Thomas Leaming*, with him *Charles Biddle*, for appellant.— The conductor's act in mounting the vacant front step is not sufficient evidence of any negligence : Dennis v. Pittsburg, etc., R. R. Co., 165 Pa. 624.

The fall of the plaintiff, even if simultaneous, is not shown to have been the natural and probable consequence of the conductor's act, which he should have foreseen : Barry v. Union Traction Co., 194 Pa. 576 ; Bumbear v. United Traction Co., 198 Pa. 198 ; Moss v. Philadelphia Traction Co., 180 Pa. 389 ; Smith v. Holmesburg, etc., Electric Ry. Co., 187 Pa. 451.

It is negligence per se to leave a seat and ride upon the front platform of a moving trolley car : Thane v. Scranton Traction Co., 191 Pa. 249 ; Camden & Atlantic R. R. Co. v. Hoosey, 99 Pa. 492 ; Bumbear v. United Traction Co., 198 Pa. 198 ; Woodroffe v. Roxborough, etc., Ry. Co., 201 Pa. 521.

The conductor's request is not an excuse for doing that which is negligence per se : Penna. R. R. Co. v. Langdon, 92 Pa. 21 ;

Rothstein v. Penna. R. R. Co., 171 Pa. 620; Reilly v. Green, etc., Street Pass. Ry. Co., 4 W. N. C. 273; Deery v. Camden, etc., R. R. Co., 163 Pa. 403; Fisher v. Paxson, 182 Pa. 457.

The charge relating to damages was erroneous: McKenna v. Citizens' Nat. Gas Co., 198 Pa. 31; Wallace v. Penna. R. R. Co., 195 Pa. 127.

*Eugene Raymond*, for appellee, cited: Brainard v. Nassau Electric R. R. Co., 61 N. Y. Supp. 74; Trumbull v. Erickson, 97 Fed. Repr. 891; Walling v. Germantown Pass. Ry. Co., 97 Pa. 55–58; Reber v. Pittsburg, etc., Traction Co., 179 Pa. 339; Breunniger v. Penna. R. R. Co., 9 Pa. Superior Ct. 461; Dennis v. Pittsburg, etc., R. R. Co., 165 Pa. 624; Smedley v. Hestonville, etc., Pass. Ry. Co., 184 Pa. 620.

OPINION BY MR. JUSTICE MESTREZAT, March 30, 1903:

The chief and principal complaint of the defendant company, which is the appellant here, is that the trial court erred in not affirming its tenth point and in not withdrawing the case from the jury. This would have been manifest error. The learned trial judge submitted the case in a charge exceptionally clear, comprehensive and explicit on every point presented for the consideration of the jury. The verdict was for the plaintiff and against the defendant company.

On Saturday evening, between five and six o'clock, on December 16, 1899, Robert McCaw, the plaintiff, aged twenty-one years, with a fellow laborer, boarded one of the defendant's cars on Sixth street at the corner of Dauphin street in the city of Philadelphia to go to his home in the southern part of the city. It was a closed car with a seat along either side. The two men were in the employ of A. G. Elliott & Company, manufacturers of paper, for whom they drove delivery wagons. Immediately before taking the car, they were engaged in performing some heavy work about the stable of their employer. They entered the car and took seats on the west side, near the center. As the car proceeded south on Sixth street, many persons entered it. The seats were all occupied, the passageway was crowded, and persons were standing on both the rear and front platforms. The plaintiff gave his seat to an elderly lady and stood in the aisle near the front door. When the car arrived

at Arch street, some ladies entered it and the conductor said to the plaintiff: "Won't you step out front and make room for these ladies?" He complied with the request, stepped out on the front platform where six or seven other passengers were standing and stood on the extreme left or east side of it. In the language of the witnesses, the car was then "loaded up;" there was a great crowd on it. The plaintiff stood with his back against the car and supported himself by holding to the brass bar passing horizontally under the window. When the car approached Washington avenue, on which is laid the double track of a steam railroad, it gradually slowed up, and the conductor alighted from the front platform of his car on the west side, ran to the railroad tracks, and seeing no danger, signaled the car to come forward. After the car had passed over the tracks a short distance, the conductor jumped on the step on the west side of the front platform, and the plaintiff was thrown or fell off on the east side of the platform, and his foot was so badly injured by the wheel of the car that after two operations his leg had to be amputated.

It is claimed on the part of the plaintiff that his injuries were caused by the negligent conduct of the defendant's employees in charge of the car on which he was a passenger. The testimony tended to show, in addition to what is stated above, that the car was run very fast over the railroad crossing on Washington avenue and down the descending grade on the south side of the avenue until the plaintiff was thrown from it; that after the car had passed the railroad tracks its speed was suddenly accelerated, was "bouncing up and down," and was "swaying on both sides" as it went down the incline; that at the time the conductor jumped on the step on the west side of the front platform, he caused the passengers standing on the platform to go or fall against the plaintiff standing on the opposite side, whereby the latter's hold on the rail beneath the window was broken and he was thrown from the car. The manner in which the car was being run at the time of the accident is alleged to have been reckless and careless, considering its overcrowded condition and the fact that it was then on a descending grade.

The defendant company denies that the plaintiff's injuries were occasioned by the negligent conduct of its employees, and claims that his own negligence caused his injuries. It al-

leges that the plaintiff left his seat in the car voluntarily and went out on the platform, and by reason of his intoxicated condition fell from the car. It is denied that the conductor re-entered the car by the front platform after it had passed Washington avenue and thereby caused the plaintiff, who was standing on the opposite side of the platform, to fall from it. As a further defense to the action, the defendant, on the trial, presented a paper, signed by the plaintiff, releasing it from all claims of damage by reason of the accident. The plaintiff introduced evidence to show that the release was procured by fraud, and that he was in the hospital suffering from his injuries and was unconscious at the time it is alleged the release was signed by him.

It will be observed that the questions presented for determination were questions of fact, and that the case was clearly for the jury. In the beginning of his charge, the learned trial judge very properly observed : " This is a case of some importance. In it arise an unusual number of questions of fact and it will require the utmost of your good judgment and your care and attention to determine those questions of fact accurately in order that justice may be done between the parties. Those are questions which are exclusively for you to decide."

Being a carrier of passengers, the defendant had a high degree of care imposed upon it. The company was required to exercise this care in receiving and in carrying the plaintiff to his destination. It has not yet been declared negligence for a street railway company to permit its cars to be overcrowded, but when such a condition prevails, additional care and precaution must be exercised by the conductor and motorman to protect the passengers against resultant danger: Reber v. Pittsburg, etc., Traction Co., 179 Pa. 339. A street railway company cannot invite or permit passengers to board its cars beyond their normal capacity and not be responsible for danger which necessarily results from their overcrowded condition. If a passenger is permitted to enter a car having no vacant place except on the platforms and the conductor accepts his fare, he is justified in standing on the platform if he exercises proper care in doing so; and by receiving him the carrier undertakes and gives him assurances that it will take care of him and guard him against accident as far as the circumstances permit: Thane v. Scranton Traction Co., 191 Pa. 249.

Here the evidence disclosed the fact that the plaintiff observed his duty by taking a seat in the car when he entered it.   He subsequently gave it to an elderly lady who was compelled to stand in the passageway by reason of the crowded condition of the car.   Later, at the request of the conductor that he make room for more lady passengers in the car, the plaintiff went to the front platform, where he attempted to secure his safety by taking hold of the railing beneath the car window. This was his position when he was thrown from the car, and it was taken at the request of the conductor and because of the overcrowded condition of the body of the car.   It is true that the defendant contends that there was sufficient room in the car for the plaintiff and that he was negligent in not taking a seat on the inside of the car; but this was submitted to the jury and was found against the defendant.   The learned trial judge said to the jury : " If there was sitting room inside of the car where he might have taken his seat, then it would be negligence per se . . . . negligence in that mere fact . . . . for him to be upon the front platform.   But you will remember the evidence in this case as to the condition of the car, many witnesses having told us that the car was full and crowded at the time."   It was also alleged by the defendant that the plaintiff's drunken condition caused him to fall from the car, and that his intoxication contributed to his injuries.   This, like the other allegation of negligence in the plaintiff, was submitted to the jury with proper instructions, and the finding was against the defendant.   The question of contributory negligence of the plaintiff, therefore, was considered and determined in his favor by the proper tribunal.

It is earnestly contended by the defendant that there was no evidence of negligence on the part of its employees in the conduct of the car at the time of the accident.   But this was clearly for the jury.   We think there can be no doubt, under the evidence, that at that time the number of passengers in the car was far in excess of its normal capacity.   This imposed upon the company's employees a very high degree of care in crossing the railroad tracks and in descending the grade immediately thereafter.   These were places of danger to persons on the overcrowded platform of the car, and the employees should have recognized the fact and run the car accordingly.   The

defendant alleges that this was done, that the car was run slowly at these places with no unusual or unsafe movement or swaying of it, and that it crossed the railroad tracks and proceeded on the descending grade in the ordinary and customary · manner. The defendant company denied that its conductor carelessly jumped on the front platform of the car and crowded the passengers against the plaintiff so that he lost his hold on the bar beneath the window and was thrown to the street, or that the rapid speed and undue swaying of the car caused the plaintiff to be thrown from it. There was evidence to support the contention of both parties as to these matters, and it necessarily had to be submitted to the jury for their consideration. We will not consume time and space by referring to the testimony of the many witnesses called by the parties, but it will be sufficient to suggest that the whole testimony, and not the excerpts upon which counsel base their arguments, had to be considered by the jury in determining the facts of the case.

In the fourth assignment, the defendant alleges error in the judge's charge as to the question of damages. It is claimed that the charge in this respect was not justified by the evidence and that in effect the jury was told that the earning capacity of the plaintiff was totally destroyed. The trial judge did say to the jury, as alleged, that the plaintiff "says that up to this time, in consequence of the loss of his leg, he has not been able since to earn anything." A reference to the testimony bears out this statement. The plaintiff testified that since the accident he could get no work, that he had not asked any business man for a job, but had asked certain persons to get him a job; that he had tried, but could not get work by reason of the loss of his leg. This is substantially what the trial judge told the jury. This testimony should be taken in connection with the fact that the plaintiff's business had been principally that of a teamster, requiring him to handle heavy material, and he evidently referred to that kind of employment when he said he had been unable to get work. The jury would not conclude that he meant to say in his testimony, that he could get or do no work of any kind. The language used by him would be regarded as referable to his former employment. The excerpt from the charge above quoted was followed by

instructions that the plaintiff would be entitled to compensation for loss of earning power, in determining which the jury was told they must consider how long he was likely to live and his earning capacity was likely to continue. In this connection the judge also said : "You do not need to be reminded that he has lost his leg from the knee downward, and that is a serious loss to a man, and is likely to result in inconvenience and in pain." This language meant, and the jury would so construe it, that the loss of the leg would be serious and would result in inconvenience, but not in a total loss of earning capacity. The jury was then admonished that they could not give an exaggerated verdict, and that if they did it would have to be set aside. It was shown by the evidence that the plaintiff was earning $10.00 a week at the time he was injured. His age and ability to work were also disclosed by the testimony. The attention of the jury was directed to these facts, and we are not convinced that the charge as a whole misled the jury on the question of damages.

The validity of the release was determined against the defendant by the jury, and the assignments do not raise any question in regard to it. The learned counsel for the defendant company, however, in their printed brief, refer to and criticise the language used by Judge PENNYPACKER, in his charge, wherein, after stating the circumstances under which the release was obtained from the plaintiff by Brobt, the defendant's agent, it is said : "When we consider that the agent of the traction company under these circumstances secured from him for a small consideration a release to be signed, it is certainly an act not to be commended." We think the learned trial judge was very conservative and fully justified, under the evidence, in the language used by him bearing upon the conduct of Brobt in securing the release from the plaintiff. This release was set up as a defense to the plaintiff's claim, but the testimony, which was believed by the jury and doubtless by the judge, disclosed that it had been procured at a time and under circumstances which merited the most severe condemnation and rendered it void. It was introduced in the case by the defendant company to prevent a recovery, and if the consequences were prejudicial to the defendant's case, as counsel seemed to

think, it is not the fault of the plaintiff nor of the court below.

The assignments of error are overruled and the judgment is affirmed.