# Abel, Appellant, v. Northampton Traction Company.

*Negligence—Street railways—Summer car—Standing upon running board —Passenger—Burden of proof—Evidence.*

Where a person is unable to find room on a summer car elsewhere than upon the running board, and the street railway company accepts him as a passenger in that position, and while riding on the running board he is killed in a collision with another car, the burden of showing that the accident was not caused by the negligence of the motorman of the colliding car is upon the street railway company. In such a case a presumption 'of negligence arises against the company, and the burden is on the company to rebut it.

In an action against a street railway company to recover damages for the death of plaintiff's husband it appeared that on the evening of the accident, a trolley car crowded with passengers started from the platform of a park on the return to a city. A short distance from the end of the platform there was a switch and siding to enable the cars to pass at that point. As the inward bound car approached the switch, another car coming in the opposite direction from the city entered the switch and passed over the turnout towards the platform. Instead of stopping on the turnout the latter car ran on towards the second switch which it reached just as the inbound car was crossing. The outbound car struck the inbound one about the middle of the side. The deceased was caught between the cars and killed. There was testimony that the deceased was standing on the running board of the inbound car, but two witnesses testified that he was standing on the track next to the car. *Held,* that the court could not say as a matter of law that the deceased was guilty of contributory negligence even if standing on the track, inasmuch as there was no reason why he should have apprehended that the outbound car would continue to run out from the siding and over the switch, and would strike with its front end the side of the inbound car.

Where a street railway company anticipating a great crowd on a particular evening at a park owned by it provides in addition to its trolley cars a steam railroad train for visitors to the park, a visitor cannot be charged with contributory negligence in taking passage on a crowded trolley car rather than on the train.

*Negligence—Damages—Husband and wife—Death of husband—Divorce.*

In an action by a wife to recover damages for the death of her husband caused by the negligence of another, the fact that plaintiff had consulted counsel as to her right to obtain a divorce, does not affect her right of action, and proof as to such matter is irrelevant.

In such a case there is no error in permitting the defendant to show on cross-examination that the father of the deceased contributed to the support of the plaintiff, particularly where the direct examination showed that the earning capacity of the deceased was very small.

*Negligence—Street railways—Collision—Evidence.*

In an action against a street railway company to recover damages for the death of plaintiff's husband killed in a collision, evidence as to the effect of the collision upon other passengers is immaterial and irrelevant to show the extent and character of the injuries to the deceased.

Argued March 6, 1905.   Appeal, No. 157, Jan. T., 1904, by plaintiff, from judgment of C. P. Northampton Co., Dec. T., 1902, No. 46, on verdict for defendant in case of Cora Alice Abel v. Northampton Traction Company.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ.   Reversed.

Trespass to recover damages for personal injuries.   Before SCHUYLER, P. J.

The circumstances of the accident were stated in the opinion of the Supreme Court.

George Lehman, a witness for plaintiff, was asked this question:

" Q. Was there a man at Fourth and Northampton streets, Easton, announcing that there was a train provided by the trolley company?   A. During the early part of the day?   Q. Yes.   A. Yes, sir."

Objected to as immaterial and irrelevant.

The Court: The objection is overruled and bill sealed for plaintiff. [5]

Lawrence P. Meyers was asked this question:

" Q. What were your instructions?   A. My instructions was to go to the corner of Fourth street at 11 o'clock in the morning to make an announcement to take the cars—"

Objected to, for the same reason that we objected to the testimony of Mr. Lehman; that it is irrelevant and immaterial as to what took place at Fourth and Northampton streets, and also what took place at the park, what announcements were made by the witness at the park with reference to taking the railroad train in preference to the trolley.

The Court: The objection is overruled and bill sealed for plaintiff. [6]

Defendant's witness, Wilbur Bender, was asked this question:

" Q. Was he under the influence of liquor in the evening? " Defendant proposes to prove by the witness that at the time of the accident Percy Abel was in an intoxicated condition.   Also propose to prove his habits, and frequent intoxication, for the purpose of illustrating the condition of his health and probable life, and as upon the question of contributory negligence.

So much of the offer as relates to the offer to prove that he

was intoxicated at the time of the accident plaintiff objects to that as being immaterial and irrelevant to the issue.

The Court: The objection is overruled and bill sealed for plaintiff. [7]

"Q. Did you see him talking to Mr. Hay? A. I did. Q. Did you hear what Mr. Hay said to him? A. I can't recall the words. Q. Can you give us the substance of what he said? Did he say anything to him about taking the train?"

Mr. Stewart: This is objected to as immaterial and irrelevant. The testimony as to what occurred between Mr. Abel and Mr. Hay which the witness says he overheard is objected to as immaterial and irrelevant.

Mr. Fox: This is to be followed by proof, by Mr. Hay, that he had this conversation with Mr. Abel and induced him to take this train, and actually took him to the train.

The Court: The objection is overruled and bill sealed for plaintiff. [8]

Mr. Zinn was asked this question:

"Q. What was the arrangement you made with reference to the train?"

Mr. Fox: Defendant proposes to prove by the witness that he was a member of the committee of the labor union that arranged with the officers of the trolley company with reference to the transportation of the crowd that day and that the arrangement included provision for a steam train; to be followed by proof that the labor union also arranged to have Mr. Meyers there for the purpose of announcing to the public generally the provisions that were made for the accommodation of the public.

Objected to as immaterial and irrelevant what arrangement was entered into by the labor union and the railroad company with reference to transportation of the crowds to and from the park.

The Court: The objection is overruled and bill sealed for plaintiff. [9]

Thomas A. H. Hay was asked this question:

"Q. Did the traction company pay the entire cost of the running of the train? A. We paid the entire cost."

Objected to for the same reason, the amount paid and who it was paid to, as utterly incompetent and irrelevant.

The Court: Same ruling and bill sealed for plaintiff. [10]

Plaintiff was asked this question:

" Q. After you went to Philadelphia did you take some steps towards procuring a divorce? A. No, I did not. Q. Not at any time prior to his death?   A. Only at one time I asked what could be done with reference to that.   I never applied for a divorce."

Objected to, as not cross-examination. The testimony would be incompetent and irrelevant for any purpose at any time in the case.

The Court: The objection is overruled and bill sealed for plaintiff. [11]

Plaintiff's witness, C. J. Abel, on cross-examination was asked this question:

" Q. After that time did you contribute to her support in any way ?   A. Well, I paid some money out of my own pocket. He wouldn't pay it.   Q. You paid some of the alimony out of your pocket ?   A. Yes, sir,"

Objected to as not cross-examination.

The Court: The objection is overruled and bill sealed for plaintiff. [12]

Mr. Stewart: Plaintiff offers to prove by the witness that at the time of the collision when the decedent, Percy Abel, was struck by the car coming from Easton, that other passengers were injured by the same collision.

Objected to as incompetent and irrelevant and as not a part of the res gestæ, and that it would tend to raise collateral issues as to which the court in the action now pending could not inquire.

The Court: The objection is sustained and bill sealed for plaintiff. [13]

The court charged as follows:

Between 9 and 10 o'clock in the evening of Labor Day, 1902, plaintiff's husband was struck by a car of the defendant, receiving injuries from the effect of which he died a few hours later.   The present action has been brought to recover damages for the loss thus sustained on the theory that it was occasioned by the negligence of the defendant.   [I do not think there is any evidence that would justify you in finding that

the injury complained of was the result of defendant's negligence. But even if the fact were otherwise it is clear that the negligence of the deceased contributed to the injury.] [1] The only eyewitnesses of the accident were two women, friends of the deceased, who stood near him at the time, both of whom testify that when he was struck he was standing on the track over which the offending car was moving. There is no evidence that he was forced into this position or that it was not his own voluntary selection. True, these women were defendant's witnesses. It is also true that one of the plaintiff's witnesses testified that a very short time, if not immediately before the accident, the deceased was standing on the running board of a crowded car pointed in a different direction from the offending car, but this witness did not see the accident, and frankly admitted that he did not know where the deceased was standing when it occurred. [This leaves wholly uncontradicted the testimony of the two women, which, if believed, and no reason has been assigned why it should not be·believed, clearly establishes contributory negligence on the part of the deceased.] [2]

[But this is by no means the only evidence bearing upon the question of contributory negligence. The accident happened at a station erected by the defendant company near a pleasure resort known as Bushkill Park. On the opposite side of the park, and also near to it, the D., L. & W. R. R. Co. had a branch road leading, as did the defendant's road, to Easton, the home of the deceased. The defendant, anticipating a great crowd beyond the capacity of its cars, hired a train of cars from the D., L. & W. Co., to ply between the park and Easton on the day in question, and also constructed a well defined path, lighted at night by electricity,.leading through the park to the D., L. & W. trains. The fare on both roads was the same. The defendant also employed L. P. Meyers, ·familiarly known for his stentorian voice, to announce, from time to time the existence and movements of these trains, and this was done at the defendant's station and in the park during the evening. Moreover, Mr. Hay, the president of the defendant company, met the deceased, whom he had known from childhood, a very short time before the accident, and advised him to take the train for safety, and walked with him· a short distance in that

direction, the deceased being somewhat under the influence of liquor. None of these facts are disputed, and it is not pretended that either the train or the path to it was unsafe, or that the train was unduly inaccessible. A clearer case of contributory negligence than is thus presented it would be difficult to conceive of: Smith v. City of New Castle, 178 Pa. 298; Musselman v. Hatfield Boro., 202 Pa. 489, and many other cases. I therefore direct you to return a verdict in favor of the defendant.] [3]

The defendant presented this point:

3. Under all the law and the evidence the verdict must be for the defendant. *Answer :* Affirmed. [4]

*Errors assigned* were (1–4) above instructions, quoting them; (5–13) ruling on evidence, quoting the bill of exceptions.

*Russell C. Stewart*, with him *Frank S. Busser* and *Ira J. Williams*, for appellant.—The plaintiff made out a prima facie case : McCaw v. Traction Co., 205 Pa. 271.

The evidence being conflicting as to the plaintiff's contributory negligence and the negligence of the defendant, the case was for the jury : Muhlhause v. Monongahela St. Ry. Co., 201 Pa. 237; Keator v. Traction Co., 191 Pa. 102 ; Ely v. Pittsburg, etc., Ry. Co., 158 Pa. 233; Strader v. Monroe County, 202 Pa. 626 ; Creachen v. Bromley Bros. Carpet Co., 209 Pa. 6 ; Shaffer v. Clark, 90 Pa. 94; Weaver v. Craighead, 104 Pa. 288 ; Braunschweiger v. Waits, 179 Pa. 47 ; Stover v. Penna. R. R. Co., 195 Pa. 616 ; Penna. R. R. Co. v. Werner, 89 Pa. 59 ; Penna. R. R. Co. v. Barnett, 59 Pa. 259 ; Spear v. R. R. Co., 119 Pa. 61 ; Phila. & Reading R. R. Co. v. Heil, 5 W. N. C. 91 ; Lehigh Valley R. R. Co. v. McKeen, 90 Pa. 122; Longenecker v. Penna. R. R. Co., 105 Pa. 328 ; Cougle v. McKee, 151 Pa. 602; Iaquinta v. Traction Co., 166 Pa. 63; Howett v. R. R. Co., 166 Pa. 607 ; Harlow v. Homestead Boro., 194 Pa. 57; Welsh v. Traction Co., 202 Pa. 530 ; Rauch v. Smedley, 208 Pa. 175.

Deceased was not guilty of contributory negligence because he chose to go home on the trolley instead of the train : Smith v. City of New Castle, 178 Pa. 298.

The testimony in regard to the relation between the defend-

ant and the Delaware, Lackawanna & Western Railroad Company, and the testimony that the decedent was intoxicated was irrelevant and should have been excluded.

The fact that decedent had deserted his wife did not relieve him from her support or affect her right of action: Appeal of Nye, 126 Pa. 341; Drinkhouse's Estate, 151 Pa. 302.

*E. J. Fox*, with him *J. W. Fox*, for appellee.—The deceased was guilty of contributory negligence: Holmes v. Traction Co., 199 Pa. 229; Malpass v. R. R. Co., 189 Pa. 599; Rothchild v. R. R. Co., 163 Pa. 49; Holland v. Kindregan, 155 Pa. 156; Lonzer v. R. R. Co., 196 Pa. 610; Spear v. Phila., etc., R. R. Co., 119 Pa. 61; Heh v. Gas Co., 201 Pa. 443; Muhlhause v. Ry. Co., 201 Pa. 237; Holmes v. Traction Co., 199 Pa. 229; Mooney v. Penna. R. R. Co., 203 Pa. 222; Ammerman v. Coal Twp., 187 Pa. 326; Penna. R. R. Co. v. Henderson, 51 Pa. 315.

OPINION BY MR. JUSTICE POTTER, May 24, 1905:

This action was brought to recover damages for the death of plaintiff's husband, caused, as is alleged, by the negligence of the defendant company. After nine o'clock in the evening of September 1, 1902, a trolley car crowded with passengers started from the platform at Bushkill park on the return trip to Easton. A short distance from the end of the platform there was a switch and siding to enable the cars to pass at that point. As the inward bound car approached the switch, another car coming in the opposite direction from Easton entered the switch and passed over the turnout towards the platform. Instead of stopping on the turnout, the latter car ran on towards the second switch which it reached just as the inbound car was crossing it, and the result was a collision, by which several persons were injured. The outbound car struck the inbound one about the middle of the side, and the husband of the plaintiff was caught between the two cars and crushed so badly that he died in a few hours.

The motorman of the colliding car testified that as he approached the switch so many persons jumped on the car and platform and crowded around him, that he could not move and could not control the car. If it had not been for the crowd he could have averted the accident. It was so dense that he could

not move his arms so as to put on the brake. This, he said, was the cause of the accident.

On behalf of the plaintiff, Harry Petty testified that at the time of the accident he was on the returning car, which was crowded, the seats being all filled and also the running boards at the sides. He says he "saw the deceased who was standing on the running board just before he was hit." That he "had his arms around the standard." And that "the blow kind of turned him around." On cross-examination, the witness said that while he saw the deceased on the running board just before he was hit, he could not tell whether he was on the running board or on the ground when he was hit.

Floyd Stem testified that he saw the car hit a person who was standing on the running board, but it turned his face so that he could not recognize him, and he was unable to say whether he was plaintiff's husband.

This was all the evidence offered by the plaintiff to show where her husband was standing when struck and injured. But it was sufficient, we think, to justify its submission to the jury. If the decedent was unable to find room upon the car, elsewhere than upon the running board, and if the defendant company accepted him as a passenger in that position, and was undertaking to carry him, he was entitled to protection. If he was thus struck and injured by the other car, the burden of showing that the accident was not caused by the negligence of the motorman of the colliding car, was certainly upon the defendant company.

In Madara v. Electric Ry. Co., 192 Pa. 542, Justice DEAN said (p. 547) : "If the accident had been apparently caused by the act of a stranger while the plaintiff was a passenger, as in Railway Co. v. Gibson, 96 Pa. 83 (a collision with a hay wagon), the burden would have been on her to show negligence on the part of the defendant. But when it arose from a collision between defendant's cars, operated on its own rails, the presumption of negligence arises and the burden is on the defendant to rebut it."

In Thane v. Traction Co., 191 Pa. 249, the present Chief Justice said (p. 253) : "Cases where the car is crowded and no seat is available rest upon a different basis. There the traveler, if he is to get on at all, must stand on the platform,

with its rods, etc., to hold by, or inside with a strap ·for that purpose. He is presented with a choice of evils, ánd his action must be judged by the jury, while on the other hand the carrier by receiving him, undertakes and gives him assurance that it will take care of him and guard him against accident as far as the circumstances will permit."

In Bumbear v. Traction Co., 198 Pa. 198, where the plaintiff was injured while riding on the side step of a crowded open summer car, Justice FELL said (p. 200): " When the passenger by invitation of the conductor or with his knowledge and assent, and from necessity because of the want of sitting or standing room within the car, rides on the side step, he is entitled to the same degree of diligence to protect him from dangers which are known and may readily be guarded against, as are other passengers."

Hence, if, in the present case, the deceased was upon the car when the collision occurred, ·the presumption of negligence arose and the case was for the jury.

On the part of the defendant two witnesses were called, Catharine Nuttall and Sarah Thatcher, both of whom testified that the deceased was standing on the track alongside the car when he was struck, and was not upon the running board.

The trial judge instructed the jury that the uncontradicted testimony of the two women, if believed, clearly established contributory negligence. In this statement we think there was error. Even if the decedent was standing upon the ground at the side of the car, this is not a place which the court could say as a matter of law was intrinsically dangerous. There was no reason as we see it, why the decedent should have apprehended that the outbound car would continue to run out from the siding and over the switch, and would strike with its front end, the side of the inbound car. In any event it was not for the court to say as a matter of law that the decedent was guilty of contributory negligence in assuming the position in which he was when struck by the car. Whether or not his conduct in this respect was negligent under the circumstances was for the jury.

Nor should the court· have said that the failure of the deceased to patronize the steam railroad on the night of the

accident; rather than the trolley, was contributory negligence. Both methods of conveyance were open to the public and the deceased had a perfect right to exercise his choice.

It would be strange indeed if the defendant company could charge any of its patrons with contributory negligence in using the facilities which it was offering to the public. We sustain the first, second, third and fourth specifications. We consider the testimony irrelevant, which was admitted with reference to providing transportation on the steam railroad, and against the objection of plaintiff's counsel, as set forth in the fifth, sixth, eighth, ninth and tenth specifications of error, and these assignments are therefore sustained.

The fact that plaintiff had consulted counsel as to her right to obtain a divorce, did not affect her right of action in this case, and proof as to that matter was also irrelevant. The eleventh assignment is sustained. We see no error in permitting defendant to show on cross-examination that the father of deceased contributed to the support of the plaintiff. The direct examination had shown that the earning capacity of deceased was very small. Nor do we see that the effect of the collision upon other passengers was material or relevant in showing the extent and character of the injuries to the deceased.

The twelfth and thirteenth specifications are, therefore, dismissed.

The judgment is reversed with a venire facias de novo.