# Renney *v.* Webster, Monessen, Bellevernon & Fayette City Street Railway Company, Appellant.

*Negligence—Street railways—Standing upon platform.*

1. When a passenger on an electric car by invitation of the conductor, or with his knowledge and assent, and from necessity because of the want of sitting or standing room inside the car, rides on the platform, he is entitled to the same degree of diligence to protect him from dangers which are known, and may readily be guarded against as are other passengers. If the evidence is conflicting as to whether there is available space inside the car, the case is for the jury on the question of the passenger's contributory negligence.

2. In an action by a passenger against a street railway company to recover damages for personal injuries sustained while standing upon the platform, the case is for the jury on the question of defendant's negligence and plaintiff's contributory negligence, where the evidence is conflicting as to whether there was available standing space inside the car, and the evidence for the plaintiff tends to show that the car on which he was a passenger was started by an official of the company

within four or five yards of another car, on the same track; that the forward car in taking a curve lost its trolley, when its lights went out; that the second car struck it within a minute after it had started, and that the motorman of the second car admitted that he did not have his car under such control as to avoid the accident although his brakes and other appliances were in proper condition, so that he could have stopped the car, if he had been careful, within a safe distance.

Argued April 16, 1912.   Appeal, No. 12, April T., 1912, by defendant, from judgment of C. P. Westmoreland Co., Feb. T., 1910, No. 402, on verdict for plaintiff in case of Arthur Renney v. Webster, Monessen, Bellevernon & Fayette City Street Railway Company.   Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Affirmed.

Trespass to recover damages for personal injuries.   Before Doty, P. J.

At the trial it appeared that the plaintiff was injured on August 15, 1908, while riding as a passenger on one of defendant's cars between Monessen and Bellevernon.   At the time of the accident the plaintiff was standing on the platform of the car.   The evidence was conflicting as to whether there was standing room inside the car.   Plaintiff's injuries were caused by a collision between the car in which he was riding and one which was started four or five yards behind it on the same track.   Plaintiff's car in taking a curve lost its trolley, and its lights went out.   The second car struck it within a minute after it had started and at a time when the forward car was visible to a witness who was on the second car at a distance of more than ten feet.   The collision threw the plaintiff against the door, breaking the glass in it, and knocking him to the ground.   The motorman of the second car admitted that he did not have proper control of it.

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff for $678.   Defendant appealed.  ·

*Error assigned* was in refusing binding instructions for defendant.

*David McCloskey*, with him *Gaither & Whitten*, for appellant.

*H. E. Marker*, with him *C. B. Hollingsworth*, for appellee.

OPINION BY ORLADY, J., July 18, 1912:

When the plaintiff paid his fare and boarded the car of the defendant company, which had a seating capacity for thirty-two persons, there were eight passengers seated in the car and forty-six were then received as transfers from another car. This resulted in all the space—seats, aisles and platforms—being occupied by passengers. The plaintiff was not bound to struggle for first place, and the fact that he permitted others to precede him and occupy all the seat and aisle space, so that the car was "jam full to the limit" does not necessarily make him guilty of contributory negligence. The conductor knew the situation when the plaintiff mounted the car, and when he exacted and received the usual fare he imposed on the company its duty to a passenger. When so placed by the conductor he was entitled to care in the light of the circumstances with which it surrounded him.

A long line of cases have held that it is negligence per se for a passenger to stand on the platform of a moving railroad train, and on the other hand that it is not such negligence to stand on the platform of an ordinary horse car—but the use of electricity as a motive power by passenger railway companies has created new conditions from which new duties arise. It was first held by this court, 8 Pa. Superior Ct. 446, and affirmed by the Supreme Court in Thane v. Traction Co., 191 Pa. 249, that, "When there is room to be seated inside in the passenger's proper place, and no special and sufficient reason is shown why he should not avail himself of it, it is negligence per se to

remain on the platform of a moving trolley car. Cases where the car is crowded and no seat is available rest on a different basis. There the passenger, if he is to get on at all, must stand on the platform with its rods, etc., to hold by, or inside with a strap for that purpose. He is presented with a choice of evils, and his action must be judged by the jury, while on the other hand the carrier by receiving him undertakes and gives him assurance that it will take care of him and guard him against accident as far as the circumstances permit."

This was followed by Bumbear v. Traction Co., 198 Pa. 198, in which the Supreme Court says: "But when the passenger by invitation of the conductor or with his knowledge and assent, and from necessity, because of the want of sitting or standing room inside the car rides on the side steps (a place equally at least as dangerous as on a platform), he is entitled to the same degree of diligence to protect him from dangers which are known and may readily be guarded against as are other passengers." And by Abel v. Traction Co., 212 Pa. 329, in which the two preceding cases are quoted from with approval, it is declared: "If the decedent was unable to find room upon the car elsewhere than on the running board, and if the defendant company accepted him as a passenger in that position and was undertaking to carry him, he was entitled to protection. If he was struck and injured by the other car, the burden of showing that the accident was not caused by the negligence of the colliding car, was certainly upon the defendant company. . . . If the deceased was upon the car when the collision occurred, the presumption of negligence arose and the case was for the jury"—and in Burns v. Ry. Co., 213 Pa. 143, in which the principle is again announced, that "a passenger while standing on the running board must show by affirmative testimony that it was not practicable for him to go inside the car before he can sustain an action for damages."

It must be conceded that a platform and a running board are places of danger—so apparently so that generally speaking to occupy either is negligence per se, yet as stated in a number of our cases, they are so generally used by the traveling public with the approval of the street railway companies that they may be used with reasonable safety in extreme cases, amongst which is, such a crowded condition so as to have no available seat or standing room inside the car, and to make it impractical for the passenger to get there, and when he is received by the conductor as a passenger he has the right to be dealt with as such. The burden of showing these conditions is on the plaintiff and when clearly established the case should be submitted to the jury under proper instructions.

It has not yet been declared negligence for a street railway company to permit its cars to be overcrowded but when such a condition prevails, additional care and precaution must be exercised by the conductor and motorman to protect the passengers against resultant danger, is the declaration in Reber v. Traction Co., 179 Pa. 339, which was before the Supreme Court and cited with approval when it held in McCaw v. Union Traction Co., 205 Pa. 271, as quoted from Thane v. Traction Co., 191 Pa. 249, that "a street railway company cannot invite or permit passengers to board its cars beyond their normal capacity and not be responsible for dangers which necessarily result from their overcrowded condition. If a passenger is permitted to enter a car having no vacant place except on the platform and the conductor accepts his fare, he is justified in standing on the platform if he exercises proper care in doing so."

There was some conflict in the testimony in regard to there being available space inside the car, the conductor stating that, "I would say there wasn't over fifty passengers on the car," and, "I suppose a person could put sixty-five or seventy in a car" and "the largest load I ever hauled on one of these cars was 107." Several other witnesses testified that "it was jam full," "chuck plug

full," "well filled up." The case was clearly for the jury on this branch.

In Paterson v. Phila. Rapid Trans. Co., 218 Pa. 359, a much broader declaration is made than in any former case, viz.: "When one chooses to ride upon the platform of a car rather than wait for a car in which he can be accommodated, if not with a seat, with standing room at least inside, and is injured in consequence, the law does not concern itself to inquire as to the considerations which influenced his choice. Whether serious or trivial, the result is the same. The platform is a known place of danger, and one voluntarily there assumes the risk. For the exigency which determines him to take the risk rather than delay for another car, the company is not responsible. In this case, the plaintiff with a courtesy altogether commendable, surrendered his place within the car to a lady who, but for his action, would have been excluded. Having once yielded his place in the car, he was put to his choice whether to ride on the platform or take a later car, just as the person he accommodated would have been obliged to do had he not surrendered his advantage to her. The legal consequence of his choice was, that he forfeited the advantage of the presumption, which the law raises in favor of one injured while riding in the car—that the accident resulted from the negligence of the company. His riding on the platform would not excuse negligence on the part of the company in exposing him to a known and avoidable danger; but it put upon him the burden of showing that his injuries resulted from negligence of this degree."

We take this vigorous and comprehensive language in the light of the facts of the case, to which it was applied and in view of which it is to be construed. They are stated to be—viz.: The plaintiff was riding—standing inside the body of the car, in a position of safety, when the car reached a crossing, two ladies and a gentleman signified their intention to board it. The body of the car was already filled with passengers, which fact was known

to the plaintiff. He alighted from the car to make way for the ladies, one of whom took the place he had vacated. When the plaintiff stepped on the car again he was obliged to take a position on the platform, where he was standing when the car passed a wagon which struck and injured him. The verdict and judgment was for the defendant which was affirmed on an appeal by the plaintiff.

While the cases of Thane v. Traction Co., 191 Pa. 249; Bumbear v. Traction Co., 198 Pa. 198, and McCaw v. Traction Co., 205 Pa. 271, were before the court in the appellant's brief they are not mentioned in the opinion by the Supreme Court and we do not think it was intended to modify or reverse the principles which had been recognized as effective and controlling in the cases that were clearly within the exceptions therein stated.

We are confirmed in this interpretation by the case of Mooar v. Railways Co., 219 Pa. 616, in which it is said, "It appears from the plaintiff's own testimony that he received his injuries while standing on the rear platform of the car. The burden was at once put upon him of showing that he was there under circumstances that gave rise to no imputation of negligence on his part,"— and as to the facts, "he left his seat, where he was in perfect safety, while the car was moving rapidly and with increasing speed as he reached the platform, and voluntarily occupied a place where danger is always to be apprehended. . . . In passing around a curve by some irregularity of motion in the car, he was thrown from the platform to the ground and injured. . . . The accident must be attributed to plaintiff's own want of prudence. No negligence was shown on part of defendant and the nonsuit was properly ordered." And the later case of Mittleman v. Transit Co., 221 Pa. 485, in which it is declared that "special circumstances may obtain which justify a passenger in occupying a position on the platform while a car is in motion; where a passenger enters a car and by reason of its overcrowded condition there is no vacant space in the body of it, he may occupy

the platform with the acquiescence and knowledge of the conductor: McCaw v. Traction Co., 205 Pa. 271. Such conduct does not convict him of negligence per se. His action is justified by the necessities of the case, and by accepting his fare and by permitting him to occupy the position, the conductor tacitly invites him to stand on the platform. These and other exceptions to the general rule that a passenger must not occupy the platform of a street car are recognized not only in our own, but in other jurisdictions. . . . We think that the conductor had the authority to direct the passenger to occupy the platform. It was within the powers conferred upon him by the company. The place assigned to the passenger while not regarded as safe as the body of the car, yet it is so frequently used by passengers that it cannot be regarded as imminently dangerous."

Applying these decisions to the record before us we feel that it is within the exceptions so clearly stated in the above cases. The evidence of the defendant's negligence is clear, in exposing the plaintiff to a known and avoidable danger, while he was in a place ordinarily used by passengers, and with the assent of the conductor because there was no other available place for him to occupy. His particular location on the platform had nothing to do with the proximate cause of the accident, and gave rise to no imputation of negligence on his part, if he was justified in being on any part of the platform. See also Burns v. Railway Co., 213 Pa. 143, s. c., 2. L. R. A. (N. S.) 1191; Alton Light & Traction Co. v. Oller, 217 Ill. 15, s. c., 4 L. R. A. (N. S.) 399; Harding v. Transit Co., 217 Pa. 69, s. c., 10 L. R. A. (N. S.) 352; Capital Traction Co. v. Brown, 20 App. D. C. 473, s. c., 12 L. R. A. (N. S.) 831; Miller v. Railway Co., 17 L. R. A. (N. S.) 158; Gregory v. Railroad Co., 190 N. Y. 363, s. c., 18 L. R. A. (N. S.) 160.

The car on which he was a passenger was started by an official of the company within four or five yards of another car on the same track. The forward car, in taking a curve,

lost its trolley, when the lights of that car went out.  The second car struck it within a minute after it had started and at a time when the forward car was visible to a witness who was on the second car at a distance of more than ten feet.  The collision was of sufficient violence to throw the plaintiff against the stop door, break the glass in it and thrown him to the ground.  No explanation was given as to the trolley pole coming off the forward car, and the plaintiff did not contend that there was any defect in the construction of either car.  The proximate cause of the accident as urged was,—the careless and negligent management and operation of the rear car. First.  In starting it at an unreasonably short time to follow the forward car.  Second.  The lack of care and prudence by the motorman of the second car, by not using the agencies under his direct control, placed there for such emergent purposes and which the exigencies of the case demanded.  While these combined in this instance to cause the accident, each was the negligent act of the company, and the exercise of due care by either the starter or motorman would have prevented the collision.

From the testimony of the motorman it is manifest that he did not keep his car under proper control.  He was familiar with the location, and knew that accidents frequently happen when a forward cars loses the trolley. He knew that a car was just ahead of his; though claiming that he was coming down carefully on account of the darkness, the grade, and the presence of the forward car (which he could see but for a few feet ahead of his car on account of the curve), he admits that he did not have his car under such control as to avoid the accident, and that the brakes and other appliances were in proper condition, so that he could have stopped his car within ten feet.

It is apparent that the accident was not an unavoidable one, and that the degree of care used was not adequate or reasonable in view of the circumstances, "to protect

the plaintiff from dangers which were known and might readily be guarded against." The whole case was for the jury and it was so carefully submitted by the trial judge that no exception was taken to his charge, and a new trial was not asked for.

The judgment is affirmed.