## O'Connor, Admr. v. Fellman

*Mervine, Brown & Newman*, for plaintiff.

*Phillip H. Williams* and *Boyd H. Walker*, for defendant.

DAVIS, P. J., March 31, 1966.—This complaint in trespass, containing both a count stating a wrongful death action and a count stating a survival action, was brought by David T. O'Connor, administrator of the estate of Ray Terry Fellman, deceased, against Lowell R. Fellman. Decedent died in the General Hospital of Monroe County on February 9, 1964, shortly after he had been fatally injured riding as a passenger in an

automobile driven by defendant. He was survived by a widow, Patricia I. Fellman, and two minor daughters, Tricia Ann Fellman and Teri Lynn Fellman. On November 11, 1965, pursuant to Pennsylvania Rule of Civil Procedure 4007, counsel for defendant took the oral deposition of Patricia I. Fellman. The witness freely answered questions relating to matters prior to the death of decedent but declined, on advice of counsel, to testify to certain matters subsequent thereto, with specific references to her relationship with David T. O'Connor. The case is now before the court for consideration of defendant's motion and rule under Pa. R. C. P. 4019(a), seeking an order directing the witness to answer these questions.

The scope of examination permissible under Pa. R. C. P. 4007(a), as amended, effective July 1, 1954, is limited by four restrictions. The questions posed must: (1) Be "not privileged"; (2) be "relevant to the subject matter involved in the action"; (3) "substantially aid in the preparation of the pleadings or the preparation or trial of the case"; and (4) not exceed the limitations of Pa. R. C. P. 4011. The instant case involves the application of only requirements, (2) and (3) ; no question of privilege is presented; nor is there a question involving any of the limitations set forth in Pa. R. C. P. 4011, as amended. Prior to amendment, this rule did require, inter alia, that the subject matter sought in discovery proceedings must be "competent or admissible as evidence". Counsel for plaintiff appear to be under the misapprehension that this requirement is still in effect, for they state, as the question involved: "Is evidence admissible in a wrongful death action to show the happening of events concerning beneficiaries subsequent to the death of the decedent?" That the requirement of admissibility is no longer in effect is clearly demonstrated in the case of Campbell v. Bennett, 24 D. & C. 2d 716 (C. P. Montgomery Co., 1961).

There, plaintiff had brought assumpsit to recover the balance alleged to be due and owing to plaintiff for a swimming pool constructed for defendant's decedent, Dr. George A. Bennett. Defendant sought to take depositions of plaintiff concerning dealings between himself and decedent, and plaintiff resisted, on the ground that, as surviving party, his testimony would be incompetent because of the Dead Man's Act of May 23, 1887, P. L. 158, sec. 5 (e), 28 PS §322, and the Act of June 11, 1891, P. L. 287, sec. 1, 28 PS §325. The court granted the request, and Judge Groshens said:

"Rule 4007 (2) permits discovery regarding any matter not privileged, subject to rule 4011, which is relevant to the subject matter involved in the action and will 'substantially aid' in . . . the preparation of the trial of the case. We entertain no doubt that plaintiff's records and testimony will substantially aid defendant in this manner. The fact that the testimony produced may be inadmissible will not prevent discovery. The question of admissibility is irrelevant: Goodrich-Am. §4007 (2). The 1954 amendments to the Pennsylvania Rules of Civil Procedure broadened the scope of discovery to aid the inquirer in his preparation, and the test of admissibility was eliminated. Defendant clearly may require plaintiff to produce his records and to submit to oral examination".

The same principle was applied to the production of hospital records in Rearick v. Griffith, 27 D. & C. 2d 451 (C. P. Chester Co., 1962), where Judge Riley said:

"Thus, in the instant motion it appears to us the decisive factor is whether the relevant information sought, the sobriety or insobriety of defendant, might reasonably be expected to be found in the hospital records which apparently were made a short time after the accident occurred.

"It has been advanced that the records, even if showing any substance of intoxication, are not admissible

to prove such fact: Lane v. Samuels, 350 Pa. 446. We are not inclined to prohibit examination of a record merely because it is not admissible in proof of the matter sought to be found. Relevant information leading to evidence of probative merit might well be found in such a document or record.

"Under all of the circumstances we are of the opinion that, if the condition of defendant were one of intoxication, it may reasonably be expected to appear in a hospital record and, if appearing, or even not appearing, might well be a substantial aid in the preparation of plaintiff's case, either furnishing information of other evidence of probative value, or even forming a basis for abandoning that avenue of attack. We determine that a hospital record may well reflect the condition or degree of insobriety of defendant and even though not necessarily admissible in itself in proof thereof, inspection may reasonably be expected to be of substantial aid in the preparation of plaintiff's case for trial".

From the foregoing, it is apparent that the test of relevancy in discovery proceedings under Pa. R. C. P. 4007 is not whether the anticipated answer to the proposed question can immediately qualify as admissible evidence, but whether the proposed question may possibly lead to an answer or answers which, alone or together, may be admissible and possess sufficient probative force to affect a material part of the cause of action. In Astlett Estate, 21 D. & C. 2d 1, this court had occasion to say:

"Pa. R. C. P. 4007 (a) governs the scope of examination of depositions for the purpose of discovery.

"The rule provides, in so far as applicable, as follows:

" '. . . the deponent may also be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the action and will substan-

tially aid in the preparation of the pleadings or the preparation or trial of the case'.

". . . .

"Whether or not a meretricious relationship existing between decedent and petitioner two years prior to the execution of the will would be relevant in regard to the matter of confidential relationship and undue influence cannot be determined at this stage of the proceeding. It certainly is conceivable that a meretricious relationship existing as aforesaid might be relevant and competent testimony. This being the case, discovery must be allowed: Newcomer v. United Gas Improvement Company, 9 Cumberland 1; Minichino v. Borough of Quakertown, 88 D. & C. 83; 4 Goodrich-Amram, Procedural Rules Service §4007(a)-18.

"If the information obtained in this proceeding is not relevant, it will be excluded on the trial of the case and petitioner will not be harmed. However, if contestant is restrained from obtaining this information and it develops at the trial that it is relevant, then contestant would have received irreparable injury. The motion for protective order will be denied".

In the instant case, the proposed questions are indirectly related to the measure of damages. In wrongful death actions, the rule recognized in Pennsylvania is that the damages are fixed at the time of death of decedent, and that it is improper to indulge in speculation as to the possible remarriage of the spouse: Curnow v. West View Park Company, 220 F. Supp. 367, 374 (W. D. Pa., 1963), reversed on other grounds, 337 F. 2d 241 (3rd Cir., 1964). A recent statement of the Pennsylvania criterion appears in Eichmann v. Dennis, 347 F. 2d 978 (3rd Cir., 1965), where Circuit Judge William F. Smith said:

"The damages recoverable are measured by the pecuniary loss, or the loss of a reasonable expectation of pecuniary advantage, suffered by the next of kin on

whose behalf the action is brought. Curnow v. West View Park Company, 337 F. 2d 241, 242 (3rd Cir., 1964); Frazier v. Oil Chemical Company, 407 Pa. 78, 179 A. 2d 202, 208, (1962); Gerhart v. East Coast Coach Co., 310 Pa. 535, 166 A. 564, 565 (1933). Neither the right of recovery nor the measure of damages is conditioned on actual dependency, either total or partial".

Accordingly, any evidence which has a logical tendency to reveal and establish the *reasonable expectation of pecuniary advantage* which was in fact entertained, *as of the time of decedent's death,* by the next of kin on whose behalf a death action has been brought, is relevant to the cause of action and, therefore, is a proper subject for disclosure under Pa. R. C. P. 4007(a). In effect, such evidence must be twice filtered. First, in the proceedings for discovery, it must pass the test of relevancy. Later, at trial, the totality of evidence which has satisfied that requirement must be subjected to the further test of admissibility. This test may properly involve an assessment of probative value, including consideration of the proximity to, or remoteness from, the time of decedent's death. For example, in Dow v. Carnegie-Illinois Steel Corporation, 165 F. 2d 777 (3rd Cir., 1948), the district court admitted evidence that the widow had obtained a divorce from bed and board in 1942 and decedent had unsuccessfully sued her for absolute divorce, although there was testimony that the parties had become reconciled seven months before decedent's death in 1944. On appeal, the judgment was reversed, and Circuit Judge Biggs said:

"An examination of the authorities demonstrates that there are no clear signs as to what evidence respecting marital happiness or unhappiness may or may not be admissible. It is clear, of course, that a final decree of absolute divorce prior to the death of the husband will bar recovery by the wife either under the

Federal Employers' Liability Act or under a Lord Campbell's Act since the plaintiff would have no locus standi. Under almost all other conceivable circumstances, however, recovery has been allowed by some courts though *aggravated conditions or causes of separation between husband and wife have served to mitigate damages.* While it may be doubted that the human mind, whether empaneled in a jury box or not, can cast up with any degree of accuracy degrees of domestic bliss or marital unhappiness in terms of money, this is the course upon which our law, whether Federal or State, has projected itself, and we may not now turn it into a new and perhaps more profitable direction. Obviously a limit must be put on the remoteness of the circumstances offered by a defendant to show that the plaintiff would have received little or no 'benefit' from her husband if he had continued in existence. We think that the evidence offered in the case at bar exceeds that permissible limit". (Italics supplied.)

Dow was followed and quoted by the court in Carbaugh, trustee, v. Grove, 83 D. & C. 26 (C. P. Franklin Co., 1952). This is the only authority dealing directly with the application of discovery proceedings to wrongful death actions which has been brought to our attention. It was decided prior to the 1954 amendments to the rules, at a time when Pa. R. C. P. 4011 still required that the matter to be disclosed must be both *relevant* and *admissible.* The court declined to permit defendant to ask whether or not plaintiff, at any time during the five years preceding decedent's death, had consulted a lawyer or justice of the peace relative to nonsupport. In view of the fact that at the time of decedent's death, the parties were living together and he was contributing at least $15 per week to the support of plaintiff, the court was of opinion that the circumstances sought to be elicited were, in accordance with the Dow decision, too remote.

None of the authorities cited by counsel for plaintiff involve discovery proceedings. They cast no light upon the new existing distinction between "relevance" for discovery and "relevance" at trial. Kephart v. The Pennsylvania Railroad Company, 16 Dist. R. 756 (C. P. Cameron Co., 1907), involved the directing of a compulsory nonsuit, because plaintiff, as father of decedent, had no statutory right of action. This belonged to the surviving widow, although she was living separately from decedent at the time of his death. The remaining authorities have one feature in common: They represent a failure of defendants to establish a probative connection between the circumstance offered in evidence and plaintiff's reasonable expectation of pecuniary advantage as of the time of decedent's death. In Abel v. Northampton Traction Company, 212 Pa. 329 (1905), the Supreme Court held that the trial court, over objection by counsel, improperly permitted plaintiff widow to be asked: "After you went to Philadelphia did you take some steps towards procuring a divorced?" to which plaintiff answered: "Only at one time I asked what could be done with reference to that. I never applied for a divorce": 212 Pa. 329, at Page 332.

In Philpott v. The Pennsylvania Railroad Company, 175 Pa. 570 (1896), the Supreme Court held that the trial court properly declined to charge that the jury might consider, in mitigation of damages, the fact that plaintiff had married again after bringing the suit. In The City of Rome, 48 F. 2d 333 (S. D. N. Y., 1930), the widows of sailors lost at sea were permitted to recover, although they subsequently had remarried. In Johns v. Baltimore & Ohio Railroad Company, 143 F. Supp. 15 (W. D. Pa. 1956), it was held that the widow was entitled to recover damages as of the moment of death of her husband, although at the time of trial she had become engaged to remarry.

On the other hand, evidence of separation of the parties continuing up to the date of death of decedent is admissible at trial and, a fortiori, would be the proper subject of discovery proceedings. In McGlothan v. Pennsylvania R. Co., 170 F. 2d 121 (3rd Cir., 1948), the trial judge had excluded evidence of marital status on the ground that it was irrelevant. The circuit court reversed, and Circuit Judge Kalodner said:

"We think, nevertheless, that evidence of an existing separation, or evidence of a separation commencing prior to the decedent's death and affording a reasonable inference of continuing to that point, is under the circumstances both relevant and material in mitigation of damages. Cf. Fogarty v. Northern Pac. R. Co., 1915, 85 Wash. 90, 147 P. 652, L.R.A. 1916 C, 803; Gilliam v. Southern R. Co., 1917, 108 S. C. 195, 93 S.E. 865. Such evidence, it is true, would not be adequate to deprive the husband of all benefits under the Act. Southern Ry. Co. v. Miller, 4 Cir., 1920, 267 F. 376, 381. Nor would it be sufficient to justify an inference that the decedent was not obligated, under the laws of Pennsylvania, to contribute to her husband's support, or the inference that that obligation would soon come to an end. But the question for the jury was how much would the decedent have contributed to her disabled husband".

McGlothan was followed in Naylor v. Isthmian S. S. Co., 187 F. 2d 538 (2nd Cir., 1951). There, the trial court had excluded evidence tending to show strained relations between decedent and the widow. The circuit court held that this was error, and Circuit Judge Augustus N. Hand said:

"While such evidence was not competent to show that Naylor would have divorced his wife had he lived, it was admissible as tending to show that he would not have contributed more to her support than the legal minimum and, therefore, relevant as to the amount of

her pecuniary loss. McGlothan v. Pennsylvania R. Co., 3 Cir., 170 F. 2d 121; Loetsch v. New York City Omnibus Corp., 291 N.Y. 308, 52 N.E. 2d 448. In the absence of the testimony sought to be offered we cannot say that its exclusion was not prejudicial. It had a direct bearing on any amount which the decedent might have been disposed to allow his wife or children in excess of what he might have been required to contribute as a matter of law".

Naylor was cited in Dixon v. Serodino, Inc., 331 F. 2d 668 (6th Cir., 1964), where it was held that the trial court quite properly admitted evidence of the marital difficulties of the widow and decedent as bearing upon the limited subject of the extent of support contributed by decedent to wife and child, but excluded such part of the evidence as was relied upon to show possible divorce and remarriage.

In the instant case, the marital status of the widow, Patricia I. Fellman, and decedent, Ray Terry Fellman, is a relevant part of the case because of its bearing upon the measure of damages. It will be important for the court and jury to learn what was the reasonable expectation of pecuniary advantage from the continued life of decedent which the widow in fact entertained, as of the time of his death. At the taking of the deposition, she testified:

"Q Incidentally, at any time before his passing were you and he separated?

"A We had our ups and downs.

"Q Were you separated before he died?

"A Oh, maybe for one or two days, but then he would come back home.

"Q So the longest period of time that you were separated before your husband died was about one or two days?

"A That's right.

"Q About when was that, please?

"A That was the week—the week before he was killed.

"Q And who left at that time?

"A I asked him to leave.

"Q Then he left?

"A Yes.

"Q And you asked him to leave?

"A Yes".

There followed a series of questions which the witness declined to answer on advice of counsel:

"Q Were you in the Stroudsburg Hospital from August 30, 1965, until September 2, 1965?"

"Q Were you in the hospital from November 28, 1964 to November 30, 1964?"

"Q Were there any other children born to you in addition to the two that you have testified to?"

"Q Are you raising a third child and supporting a third child that was born to you on August 30, 1965?"

"Q After the accident did a man by the name of O'Connor, David T. O'Connor, around December of 1964 move into your residence and live with you in that residence up until relatively recently?"

"Q At any time following your husband's death did you contribute to the support of David T. O'Connor?"

"Q At any time following your husband's passing did David T. O'Connor contribute to your support?"

Taken by themselves, all the questions which the witness declined to answer were clearly irrelevant and not proper matter for disclosure in discovery proceedings. However, the witness had previously testified that a week before decedent was killed, he had left their home, not of his own volition, but because she herself had asked him to leave. This fact raises the possibility that there was a pattern of connected events involving marital status which had its inception prior to decedent's death, but developed and had its culmination after the death. If this should be true, it is not unrea-

sonable to believe that it had a material effect upon the witness' expectation of pecuniary advantage at the time of decedent's death. This is an area which defendant has the right to explore in the discovery proceedings, with the understanding, of course, that some or all of the matter elicited may not be admissible at trial.

ORDER

Now, March 31, 1966, rule made absolute, subject to the right of Patricia I. Fellman, widow, to claim privilege.